# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v WILDER

Docket No. 154814. Argued on application for leave to appeal January 11, 2018. Decided June 15, 2018.

Darrell J. Wilder was tried before a jury in the Wayne Circuit Court on charges of carrying a concealed weapon, MCL 750.227; being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possessing a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b, after police officers saw defendant standing near a car in a vacant lot with what appeared to be the handle of a handgun sticking out of his pants pocket. The officers saw defendant move the object from his pocket into the trunk of the car, and when the officers opened the trunk, they found a handgun. At trial, defense counsel called defendant's wife, Tameachi Wilder, as a witness. On direct examination, Wilder testified that she had not seen defendant with a gun when he left the house on the date in question, that to her knowledge he did not own a gun, and that she did not have any weapons in the house. She was not asked about and did not offer any other information about defendant's history with guns. On cross-examination, the prosecutor did not question the witness about defendant's possession and ownership of weapons on the day of the crime but instead asked three times whether the witness knew defendant to carry guns. The witness responded "no" to each question. Over defendant's objection, the trial court, Qiana D. Lillard, J., then permitted the prosecutor to question the witness about defendant's prior weapons convictions. The jury found defendant guilty of both felon-in-possession and felony-firearm, but acquitted him of carrying a concealed weapon. Defendant was sentenced by Judge Lawrence S. Talon to five years' probation for the felon-in-possession charge and 10 years' imprisonment for the third-offense felony-firearm charge. The Court of Appeals, BORRELLO, P.J., and MARKEY and RIORDAN, JJ., affirmed in an unpublished per curiam opinion issued September 27, 2016 (Docket No. 327491), holding that the trial court had not erred by allowing the prosecution's questions. Defendant applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other peremptory action. 500 Mich 997 (2017).

In an opinion by Justice VIVIANO, joined by Justices MCCORMACK, BERNSTEIN, and CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

The prosecutor's attempt to impeach a defense witness with evidence of defendant's prior convictions violated several basic tenets of the rules of evidence. Therefore, the portion of the Court of Appeals judgment holding that it was not error to have allowed the cross-examination

of that witness concerning her knowledge of defendant's weapons-carrying proclivities and his prior weapons convictions was reversed and the case was remanded to the Court of Appeals to consider whether the error was harmless.

1. The prosecutor's attempt to impeach a defense witness with evidence of defendant's prior convictions was not governed by MRE 609, which applies when a party seeks to impeach a witness's general credibility with evidence that the witness himself or herself has committed a crime. The evidence also was not governed by MRE 608, because it was not opinion or reputation evidence concerning the witness's character for untruthfulness and it did not concern specific instances of the conduct of the witness.

2. MRE 404(b)(1) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but it may be admissible for other purposes. Generally speaking, impeachment by contradiction can be a proper purpose for the admission of other-acts evidence. Impeachment of this kind usually occurs when a prosecutor seeks to cross-examine a defendant about prior convictions in order to impeach a defendant's blanket denial on direct examination of ever engaging in conduct similar to the charged conduct. In this case, the prosecutor's initial questions were not logically relevant to a proper purpose under MRE 404(b) because they were not designed to elicit an answer contradicting any statements made by the witness on direct examination. As it pertained to weapons, the witness's direct testimony was limited to whether defendant owned a gun or possessed one on the date in question. This testimony would not have been contradicted even if the witness had acknowledged knowing that defendant generally carried weapons. Therefore, although the prosecutor articulated a proper purpose under MRE 404(b)—impeachment by contradiction—the prosecutor did not establish that the questions asked were logically relevant to impeachment.

3. Absent a proper purpose, evidence of defendant's other acts was inadmissible under MRE 404(a) unless defendant opened the door by introducing evidence of his good character, which he did not do. The prosecutor's tactic of shifting the focus from the pertinent facts to which the witness testified on direct examination to a broader inquiry about defendant's general weapons proclivities was an impermissible attempt by the prosecutor to open the subject of defendant's character. When a defendant has not offered character evidence, a prosecutor's attempt to elicit character evidence regarding the defendant on cross-examination of another witness is not permitted by MRE 404(a)(1). Although the prosecutor maintained that her second set of questions regarding defendant's prior firearm convictions was appropriate to impeach the witness's response to the first set of improper questions, a party cannot seek to elicit inadmissible character evidence on cross-examination when the opposing party has not opened the door and then claim the right to impeach the elicited denial as a subterfuge to elicit even more inadmissible character evidence. Any other conclusion would eviscerate MRE 404.

Court of Appeals judgment reversed in part; case remanded to the Court of Appeals for further proceedings.

Justice ZAHRA, joined by Chief Justice MARKMAN and Justice WILDER, dissenting, disagreed with the majority's interpretation and application of MRE 404(b), which he stated

unduly restricted the discretion of the trial judge. He would have held that the testimony that the witness did not know defendant to carry firearms did not implicate MRE 404(b) because it constituted not other-acts evidence but rather evidence of defendant not performing an act, that defendant's prior convictions were admissible for the noncharacter purpose of impeachment under MRE 404(b), and that the prosecutor's questions about the witness's knowledge of defendant served a valid nonpropensity purpose considering the totality of the circumstances, namely, to rebut the inference that the witness was a credible source of information about defendant.

©2018 State of Michigan

# OPINION

Chief Justice:          Justices:
Stephen J. Markman    Brian K. Zahra
                      Bridget M. McCormack
                      David F. Viviano
                      Richard H. Bernstein
                      Kurtis T. Wilder
                      Elizabeth T. Clement

FILED June 15, 2018

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                            No. 154814

DARRELL JOHN WILDER,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

This case presents the issue of how and when it is appropriate to impeach by contradiction using other-acts evidence. Because the prosecutor's tactics and questions violated several basic tenets of our rules of evidence, we reverse that part of the Court of Appeals' judgment holding that the cross-examination of defense witness Tameachi Wilder concerning whether she knew of defendant to carry guns and her knowledge of

defendant's prior weapons convictions was not error, and we remand this case to the Court of Appeals to consider whether the error was harmless.

## I. FACTS AND PROCEDURAL HISTORY

During defendant's trial on charges of carrying a concealed weapon, MCL 750.227; being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b, he called his wife, Tameachi Wilder, as a witness. On direct examination, the witness testified that she did not see defendant with a gun when he left the house on the date in question, that to her knowledge he did not own a gun, and that she did not have any weapons in the house. She was not asked about and did not offer any other information about defendant's history with guns.

On cross-examination, the prosecutor did not question the witness about defendant's possession and ownership of weapons on the day of the crime but instead asked three times whether the witness knew of defendant to carry guns. The witness responded "no" to each question.[1] Over defendant's objection, the trial court—which

---

[1] The precise exchange was as follows:

*Q.* Do you know of Mr. Wilder to carry weapons?

*A.* No.

*Q.* Do you know of him to carry guns?

*A.* No.

*Q.* You've been with him for nine years and you don't know of him to carry guns?

*A.* No.

2

mischaracterized both the evidence on direct examination and the witness (referring to her as a character witness rather than a fact witness)—then permitted the prosecutor to question the witness about defendant's prior weapons convictions.[2] At the conclusion of trial, the jury found defendant guilty of both felon-in-possession and felony-firearm, but acquitted him of carrying a concealed weapon. The Court of Appeals affirmed defendant's convictions, concluding, among other things, that the trial court had not erred

---

[2] The precise exchange concerning the first prior conviction was as follows:

> *Q.* And you know that he was convicted of carrying a weapon back then, correct?
>
> *A.* Yes.
>
> *Q.* So you knew that he carried weapons, right?
>
> *A.* No. I didn't know but he was convicted.
>
> *Q.* Okay. You didn't know that he—you didn't see a weapon in your house?
>
> *A.* No.
>
> *Q.* Do you know the circumstances behind that?
>
> *A.* No.

The prosecutor then asked about the second prior conviction, as follows:

> *Q.* And you know that he was convicted of having a weapon back in August of 2010 too, right?
>
> *A.* Yes.
>
> *Q.* Was that gun in your home?
>
> *A.* No.

by allowing the prosecutor's questions.[3]  After defendant sought leave to appeal in our Court, we ordered oral argument on the application, directing the parties to address, among other things, whether the prosecutor's cross-examination of the witness was proper.[4]

## II.  STANDARD OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.  Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo."  *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (citation omitted).

## III.  ANALYSIS

The prosecutor sought to impeach a defense witness with evidence of defendant's prior convictions.  This tactic was unusual, to put it mildly.  In a more typical situation, a party seeks to impeach a witness's general credibility with evidence that the witness himself or herself has committed a crime, and the admissibility of such evidence is governed by MRE 609.[5]  That is not the situation here.[6]  The evidence also does not fit

---

[3] *People v Wilder*, unpublished per curiam opinion of the Court of Appeals, issued September 27, 2016 (Docket No. 327491).

[4] *People v Wilder*, 500 Mich 997 (2017).

[5] MRE 609(a) provides for the admission of a witness's prior crimes "contain[ing] an element of dishonesty or false statement" or certain crimes "contain[ing] an element of theft" for the purpose of impeaching that witness.

[6] Notably, even if MRE 609 applied, which it clearly does not, defendant's prior weapons offenses are not the type of offenses that the rule contemplates because they do not involve an element of dishonesty, false statement, or theft and thus would not be admissible to attack the witness's credibility.

4

under MRE 608, because it is not opinion or reputation evidence concerning the witness's character for untruthfulness and it does not concern specific instances of the conduct of the witness.[7]  Therefore, neither of those rules is applicable.  That leaves MRE 404 as the rule governing the admission of evidence of defendant's prior acts and convictions. However, for the reasons below, it is abundantly clear that this evidence is also not admissible under Rule 404.

MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes . . . ."[8]  Generally speaking,

---

[7] MRE 608(a) provides for the admission of opinion or reputation testimony regarding a witness's "character for truthfulness or untruthfulness."  MRE 608(b) provides that a witness may be questioned regarding prior specific instances of conduct on cross-examination, but only if the prior instances of conduct are probative of "the witness' character for truthfulness or untruthfulness" or "the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

[8] Importantly, MRE 404(b) generally requires the prosecutor to give notice before trial that he or she intends to introduce other-acts evidence:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.  [MRE 404(b)(2).]

Therefore, in most cases, a trial court's decision whether to admit other-acts evidence should be "far removed from the heat of trial," to use the dissent's phrasing. *Post* at 1.  In this case, even though the prosecutor did not provide the required notice in advance of trial (or explain why pretrial notice should be excused), the trial judge had ample opportunity to consider the question of admissibility of the evidence when the topic came up, and defense counsel objected to its admission, both outside the presence of the jury before its admission and subsequently when defendant moved for a mistrial.

impeachment by contradiction can be a proper purpose for the admission of other-acts evidence. See *United States v Copelin*, 302 US App DC 113, 116; 996 F2d 379 (1993) ("Although it is not one of the listed permissible purposes, an attempt to impeach through contradiction a defendant acting as a witness is indisputably a legitimate reason to introduce evidence of other crimes or wrongs."), overruled on other grounds by *United States v Rhodes*, 314 US App DC 117 (1995); see also *People v Taylor*, 422 Mich 407, 414-415; 373 NW2d 579 (1985).[9] Impeachment of this kind usually occurs when a prosecutor seeks to cross-examine a defendant about prior convictions in order to impeach a defendant's blanket denial on direct examination of ever engaging in conduct similar to the charged conduct. See, e.g., *United States v Gilmore*, 553 F3d 266, 271-272 (CA 3, 2009) (and cases cited).

In this case, the prosecutor's initial questions were not logically relevant[10] to a proper purpose under MRE 404(b) because they were not designed to elicit an answer contradicting any statements made by the witness on direct examination. See *People v Denson*, 500 Mich 385, 402; 902 NW2d 306 (2017).[11] As it pertained to weapons, the

---

[9] Although this Court in *Taylor* cited MRE 404(b) in passing, it did not rely on that rule in concluding that evidence of prior convictions is admissible to rebut specific testimony of the defendant at trial. We believe that *Taylor* reached the correct result, but we take this opportunity to clarify that the admissibility of defendant's prior convictions to impeach by contradiction a witness' testimony is governed by MRE 404(b).

[10] See MRE 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

[11] In *Denson*, 500 Mich at 401, we said that logical relevance has two components: materiality and probative value. Other-acts evidence offered to impeach specific testimony satisfies the materiality component of logical relevance because witness credibility is "of consequence" to the action. MRE 401. However, the other-acts

witness's direct testimony was limited to whether defendant owned a gun or possessed one on the date in question. This testimony would not have been contradicted even if the witness had acknowledged "know[ing] of" defendant to more generally carry weapons.[12] Thus, although the prosecutor articulated a proper purpose under MRE 404(b)—impeachment by contradiction—the prosecutor did not establish that the questions asked were logically relevant to impeachment.[13] The prosecutor's broad and repeated questions

---

evidence must still be probative to the purpose for which it was offered. *Denson*, 500 Mich at 402 (stating that "the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime") (quotation marks, citation, and emphasis omitted). For the reasons discussed above, the testimony elicited was not probative with regard to impeachment.

[12] The dissent argues that we have failed to show that the prosecutor's initial questions were improper under MRE 611 because the questions were within the scope of cross-examination. That is a straw man. We have nowhere stated that the questions were improper under MRE 611 or not within the scope of cross-examination. As explained further below, however, the questions concerned other acts and were not offered for a proper purpose under MRE 404(b). A question may be within the scope of cross-examination under MRE 611 and still run afoul of another evidentiary rule, such as MRE 404(b). See MRE 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court."); *Old Chief v United States*, 519 US 172, 181; 117 S Ct 644; 136 L Ed 2d 574 (1997) (" 'Although . . . "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance.' "), quoting *United States v Moccia*, 681 F2d 61, 63 (CA 1, 1982). The dissent recognizes this principle elsewhere, see *post* at 13 n 23, but ignores it here.

[13] See *Denson*, 500 Mich at 400 ("In other words, merely *reciting* a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible. Rather, in order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test."); *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993).

about defendant's weapons-carrying proclivities were simply an attempt to elicit propensity evidence.[14]

Absent a proper purpose, evidence of defendant's other acts was inadmissible under MRE 404(a) unless defendant opened the door by introducing evidence of his good character. See MRE 404(a)(1) (prohibiting the prosecution from offering character evidence of an accused to prove action in conformity therewith on a particular occasion, except on rebuttal if the accused has first offered evidence of his or her good character). Defendant in this case, however, never opened the door by eliciting testimony as to his good character from the defense witness on direct examination. The prosecutor's tactic—i.e., shifting the focus from the pertinent facts to which the witness testified on direct examination to a broader inquiry about defendant's general weapons proclivities—was an impermissible attempt by the prosecutor to open the subject of defendant's character.[15] Where, as here, the defendant does not offer character evidence, a

---

[14] Although we need not reach the issue, we also question whether the prosecutor's use of defendant's prior convictions to impeach a separate witness could pass muster under Rule 403, which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." See *VanderVliet*, 444 Mich at 74-75 (identifying the MRE 403 balancing test as one of the four prongs of the test for admissibility under MRE 404(b)).

[15] Questions designed to elicit character evidence are generally inappropriate even when asked of the defendant on cross-examination. As a leading treatise notes:

> When the defendant is asked on cross-examination about his criminal tendencies, forcing him to object to the initial question would once again raise a red flag (he must be a crook, if he cannot give a straight answer to such a question), and if the question gets by without objection or he answers quickly, the prosecutor should not be allowed to contradict whatever he says ("no, I'm not involved in crime") by proving prior crimes. [3 Mueller & Kirkpatrick, Federal Evidence (4th ed), § 6:90, p 570.]

prosecutor's attempt to elicit character evidence regarding the defendant on cross-examination of another witness is not permitted by MRE 404(a)(1).[16]

---

That is why, unlike the dissent, see *post* at 11 n 18, we would not penalize defendant for his counsel's failure to object to the initial improper question.

The questions are even more indefensible (and unusual) in this case, since the prosecutor attempted to open the subject of defendant's character on cross-examination of a witness other than defendant. Like courts from other jurisdictions, we firmly reject this tactic. See *Smith v State*, 763 SW2d 836, 843 (Tex App, 1988) ("Further, the State may not, on cross-examination, transform appellant's fact witness into a character witness in order to impeach with otherwise admissible 'have you heard' questions."); *People v Jones*, 278 App Div 2d 246, 247; 717 NYS2d 270 (2000) ("The Supreme Court erred in permitting the prosecutor to cross-examine the fiancée about the defendant's previous convictions. Although such cross-examination may be permissible if the defendant 'opens the door' by offering evidence which tends to mislead the jury, in this case, the Supreme Court's ruling permitted the People to 'open the door' and then step through it[.]") (quotation marks and citation omitted); see also *State v Gowan*, 302 Mont 127, 131; 2000 MT 277; 13 P3d 376 (2000) ("We conclude that although a defendant can open the door with statements made during either direct or cross-examination, and a defense witness can open the door on direct-examination, a defense witness cannot inadvertently open the door on cross-examination. Under [Montana Rule of Evidence 404(a)(1)], only the accused can 'open the door' for the prosecution to introduce rebuttal character evidence.").

[16] The dissent argues there can be no violation of MRE 404 since the prosecutor's initial questions failed to elicit other-acts evidence from the witness. The dissent's assertion misses the marks for two reasons. First, it is beyond dispute—or should be—that questions designed to elicit other-acts evidence, absent a proper purpose, violate MRE 404(b) and are objectionable for that reason. See 1 McCormick, Evidence (7th ed), § 190, p 1030 n 5 ("The [404(b)] rule of exclusion encompasses questions which, though answered negatively, insinuate that the accused committed other crimes."). That is why attorneys typically object before the witness provides an answer to the question. 3 Michigan Pleading & Practice (2d ed), § 35:36, p 593 ("An objection to a question should be made before the answer."). Second, the dissent's argument is blithely indifferent to the most problematic aspect of this case—that the prosecutor was allowed to use an improper question to elicit a denial that the prosecutor then was allowed to impeach with defendant's prior criminal history.

9

Despite the analysis above, the prosecutor maintains that her second set of questions regarding defendant's prior firearm convictions was appropriate to impeach the witness's response to the first set of improper questions. However, it should almost go without saying that a party cannot seek to elicit inadmissible character evidence on cross-examination when the opposing party has not opened the door and then claim the right to impeach the elicited denial as a subterfuge to elicit even more inadmissible character evidence. See generally *People v Stanaway*, 446 Mich 643, 693; 521 NW2d 557 (1994) ("[A] prosecutor may not use an elicited denial as a springboard for introducing [otherwise inadmissible] substantive evidence under the guise of rebutting the denial.") (citation omitted). See also *Jones v Southern Pac R*, 962 F2d 447, 450 (CA 5, 1992) ("[A] party cannot delve into collateral matters on its own initiative and then claim a right to impeach that testimony with contradictory evidence. This would be a mere subterfuge to get before the jury evidence not otherwise admissible.") (quotation marks and citations omitted).[17] Any other conclusion would eviscerate Rule 404.[18]

---

[17] It is rather facile to think, as the dissent apparently does, that the prosecutor questioned the witness on defendant's prior gun convictions in order to spread doubt among the jury members about whether she really had knowledge of defendant generally. While the prosecutor may have intended to impeach the witness's specific testimony regarding defendant's wardrobe preferences and dominant hand, it is hard to see how the prosecutor would make much headway showing the witness did not have "knowledge of defendant generally," given that they were married for nine years and the witness had "been with him for sixteen years."

[18] If we looked approvingly on the prosecutor's stratagem in this case, one might expect prosecutors to ask improper propensity questions in every case if nothing more were needed to lay the groundwork for the admission of otherwise inadmissible other-acts evidence. Indeed, under the dissent's analysis, a prosecutor would have a foolproof way of admitting a defendant's prior crimes. Simply ask, "Do you know of defendant to engage in [insert criminal activity]." If the witness answers no, then no violation has occurred, and the prosecutor can then impeach the denial with defendant's criminal

## IV.  CONCLUSION

For the above reasons, we reverse that part of the Court of Appeals' judgment holding that the cross-examination of defense witness Tameachi Wilder concerning whether she knew of defendant to carry guns and her knowledge of the defendant's prior weapons convictions was not error, and remand this case to the Court of Appeals to consider whether the error was harmless.[19]

David F. Viviano
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement

---

record.  Taken a step further, a prosecutor could ask a defendant, "Do you commit crimes?"  If no, then the prosecutor may impeach with the defendant's entire criminal history.  Viewed in this light, the prosecutor's tactic is not merely a "novelty," *post* at 1, but an end run around a safeguard "deeply rooted in our jurisprudence," *People v Crawford*, 458 Mich 376, 383-384; 582 NW2d 785 (1998) ("Far from being a mere technicality, the rule reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence.") (quotation marks and citations omitted).

[19] In all other respects, leave to appeal is denied because we are not persuaded that the remaining question presented should be reviewed by the Court.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                   No. 154814

DARRELL JOHN WILDER,

      Defendant-Appellant.

ZAHRA, J. (*dissenting*).

The Court concludes that the prosecutor's use of defendant's convictions for possessing a firearm during the commission of a felony (felony-firearm) to impeach a defense witness's prior testimony on cross-examination was improper under Michigan Rule of Evidence 404(b). As more fully explained below, I disagree with the majority's interpretation and application of Rule 404(b).[1] While the manner in which defendant's prior convictions were used in this case was undoubtedly atypical, novelty alone is no reason to misconstrue the plain language of the rules of evidence. In my view, the Court, with the benefit of hindsight and far removed from the heat of trial, has unduly restricted the discretion of the trial judge with regard to the admission of evidence. Accordingly, I dissent.

---

[1] I agree with the majority that neither Rule 608 nor Rule 609 is applicable in this case.

## I.  FACTS AND PROCEEDINGS

Defendant Darrell J. Wilder was charged with carrying a concealed weapon, being a felon in possession of a firearm (felon-in-possession), and felony-firearm after two Detroit police officers saw defendant pull a hand-held firearm with his right hand from his right pants pocket and place it in the trunk of a vehicle located in a vacant lot.  One of the officers testified that defendant was wearing "corduroy or pants similar" to corduroy on the night in question.

During trial, defendant called several witnesses, one of whom was his wife, Tameachi Wilder.  This witness testified that she and defendant had been married for nine years and, although there were occasions during their marriage when they had been separated, the two of them were living together on May 16, 2014, the date of the offense.  She also testified that, to her knowledge, defendant did not wear or even own corduroys, and that he is left-handed.  When asked how she knew that defendant was left-handed, she responded, "[b]ecause I've been with him for sixteen years."

According to the witness, she was with defendant on the afternoon in question when he received a call from his brother, Carlos Wilder.  The witness testified that defendant left with Carlos and that she did not know where they were going.  The following exchange then took place between defense counsel and the witness on direct examination:

> *Q.*  Okay.  And when you see your husband leave the house did you see him with a gun?
>
> *A.*  No.
>
> *Q.*  To your knowledge, do [sic] he own a gun?
>
> *A.*  No.

*Q.* Do you have any weapons in your house?

*A.* No.

During cross-examination, the prosecutor asked the witness the following questions:

*Q.* Now you were asked whether or not Mr. Wilder had a weapon with him on that day?

*A.* Yes.

*Q.* Okay. You don't know where he went? You didn't see where he went after he left your apartment on the eastside of Detroit, did you?

*A.* No.

*Q.* Do you know of Mr. Wilder to carry weapons?

*A.* No.

*Q.* Do you know of him to carry guns?

*A.* No.

*Q.* You've been with him for nine years and you don't know of him to carry guns?

*A.* No.

At this point, the prosecutor asked to approach the bench and the jury was excused. Outside the presence of the jury, the following discussion occurred:

[*The Prosecutor*]: Your Honor, Mrs. Wilder testified that she's known him for sixteen years and has been married to him for nine years and now is testifying that she did not know him to carry a weapon. He has a Felony[-]Firearm conviction on August of 2010, another Felony-Firearm conviction on June of 2007, and I think that it is relevant and I think that I should be able to ask her about those convictions.

[*Defense Counsel*]: Your Honor, the Prosecutor is simply trying to back-door and get in convictions that she knows that she can't get in, and

3

the fact that Mr. Wilder had been convicted, these aren't crimes involving theft, dishonesty or false statements, and then it presumes that Ms. Wilder knows something. Again, she says they've had an on and off again relationship. I don't think it's relevant and it's simply a way of them trying to back-door and get in convictions that they know aren't relevant.

[*The Court*]: Well I'm going to allow and that's what happens when you put witnesses on the stand and open the door. I mean she got on the stand, and you asked her on direct examination if she's ever seen with a gun [sic], if there were any guns in the house, if he owned any weapons and if he had a gun that day, so that doesn't mean that once on cross-examination, and you talked about the length of their relationship. That doesn't mean that on cross-examination that she can't challenge that, challenge the voracity [sic] of him. In essence she becomes like a character witness and so I believe you've opened the door and I'm going to allow it. Your objection is overruled. Your objection is preserved for the record.

During further cross-examination, the prosecutor then asked the following questions:

*Q.* Ms. Wilder, you were with him in 2007, correct?

*A.* Yes.

*Q.* And you know that he was convicted of carrying a weapon back then, correct?

*A.* Yes.

*Q.* So you knew that he carried weapons, right?

*A.* No. I didn't know but he was convicted.

*Q.* Okay. You didn't know that he—you didn't see a weapon in your house?

*A.* No.

*Q.* Do you know the circumstances behind that?

*A.* No.

4

Regarding defendant's second felony-firearm conviction, the prosecutor asked the following questions:

> *Q.* And you know that he was convicted of having a weapon back in August of 2010 too, right?
>
> *A.* Yes.
>
> *Q.* Was that gun in your home?
>
> *A.* No.

Outside the presence of the jury, defense counsel moved for a mistrial on grounds that the prosecutor's questioning of the witness was "inadmissible" and "unfairly prejudicial." Defense counsel argued that she had not opened the door for character evidence because her questions of the witness concerned whether defendant possessed a firearm on the day of the incident and that it had been the prosecutor who questioned the witness about whether she knew defendant to possess a firearm. The trial court denied the motion. The jury subsequently returned a verdict of guilty for the felon-in-possession and felony-firearm charges, but acquitted defendant of carrying a concealed weapon.

Defendant appealed by right, arguing, *inter alia*, that the trial court erred by allowing cross-examination of the witness about defendant's prior felony-firearm convictions and denying the subsequent motion for a mistrial. The Court of Appeals disagreed, concluding that the trial court had not abused its discretion by denying defendant's motion for a mistrial because the trial court had not erred by admitting evidence of defendant's prior convictions.[2] In reaching this conclusion, the Court of

---

[2] *People v Wilder*, unpublished per curiam opinion of the Court of Appeals, issued September 27, 2016 (Docket No. 327491).

5

Appeals held that the impeachment evidence was admissible under Rule 404(b) because the prosecutor sought to introduce the prior convictions to challenge the credibility of the witness relative to the assertion that defendant did not own or carry firearms.

Defendant applied for leave to appeal in this Court. This Court directed the Clerk to schedule oral argument on whether to grant the application or take other action.[3]

## II. STANDARD OF REVIEW

The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision fell " 'outside the range of principled outcomes.' "[4] We review de novo preliminary questions of law, however, which include whether a rule of evidence prohibits the admission of particular evidence, and a trial court abuses its discretion if it admits evidence that is inadmissible as a matter of law.[5]

## III. ANALYSIS

It is important to keep in mind the two discrete sets of questions at issue in this case, as well as the testimonial evidence those questions elicited. The first set of questions concerned whether the witness knew defendant "to carry weapons . . . [or] guns," and the witness's responses of "no." The second set of questions concerned whether the witness had knowledge of defendant's prior felony-firearm convictions, to

---

[3] *People v Wilder*, 500 Mich 997 (2017).

[4] *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014), quoting *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

[5] *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014), citing *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

which the witness responded in the affirmative. The admissibility of the witness's testimony (which is evidence) and the questions that elicited it (which are not evidence) will be addressed in turn.

## A. TESTIMONY THAT THE WITNESS DID NOT KNOW DEFENDANT TO CARRY FIREARMS IS NOT "OTHER ACTS" EVIDENCE UNDER RULE 404(b)

To begin, the majority posits that the prosecutor's initial questions relating to whether the witness knew defendant to carry "weapons" or "guns" were improper under Rule 404(b) because the witness only testified on direct examination as to whether defendant owned or possessed a firearm on May 16, 2014, and because the questions were not logically relevant to a proper purpose under that rule. I disagree with the majority on both accounts.

First, restricting a party's cross-examination of a witness to the precise temporal confinements of direct examination would, in the words of the majority, violate a "basic tenet[] of our rules of evidence"[6] that, under Rule 611, a "witness may be cross-examined on *any matter relevant to any issue in the case . . . .*"[7] When it comes to "matters not

---

[6] *Ante* at 1.

[7] MRE 611(c) (emphasis added); see also *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001) (stating that a trial court has discretion in determining relevance and considering the possibility of unfair prejudice when ruling on the propriety of questions asked on cross-examination). Notably, evidence that falls under 404(b), even if inadmissible, is often "relevant" to an issue in a case. See *Old Chief v United States*, 519 US 172, 181; 117 S Ct 644; 136 L Ed 2d 574 (1997) ("The inquiry [into one's character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.") (quotation marks and citation omitted). Therefore, nothing in Rule 611 prohibits a prosecutor from cross-examining a witness regarding 404(b) evidence.

testified to on direct examination," it falls within the trial court's discretion to permit or limit cross-examination,[8] and a trial court's decision on a close evidentiary question will ordinarily not be an abuse of discretion.[9]

In this case, the witness's testimony on direct examination touched upon her knowledge of defendant owning or possessing a firearm earlier in the day on May 16, 2014.[10] It also touched upon her knowledge of defendant as it related to his dominant hand and his ownership of corduroy pants. The prosecutor's cross-examination expanded the temporal scope of the former issue by addressing the witness's knowledge of defendant's ownership or possession of a firearm beyond the date of the offense. Permitting this line of questioning was certainly within the range of principled outcomes

---

[8] MRE 611(c); see also *Wischmeyer v Schanz*, 449 Mich 469, 474-475; 536 NW2d 760 (1995) ("The scope and duration of cross-examination is in the trial court's sound discretion; we will not reverse absent a clear showing of abuse."), citing *Wilson v Stilwill*, 411 Mich 587, 599; 309 NW2d 898 (1981); *People v Watson*, 307 Mich 596, 607-608; 12 NW2d 476 (1943) ("[C]ross-examination on matters relevant to the issue is a matter of right and . . . the extent of it is a matter that rests in the sound discretion of the trial judge."); accord *Heshelman v Lombardi*, 183 Mich App 72, 84; 454 NW2d 603 (1990) ("The scope of cross-examination, like the admission of evidence, is a matter within the trial court's discretion, and the court's determination should not be reversed absent an abuse of that discretion.").

[9] *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000); see also *Layher*, 464 Mich at 761, citing *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982).

[10] Because the witness did not accompany defendant when he left the apartment, she had no actual knowledge as to whether defendant was in possession of a firearm while he was in the vacant lot. Accordingly, the relevancy of her testimony that she did not observe defendant in possession of a firearm while he was present in the apartment was presumably to show that it was more probable than not that he did not possess the firearm later in the day.

8

and not an abuse of discretion on the part of the trial court. The majority, however, provides no explanation for why there is a clear showing that the trial court abused its discretion by permitting these questions under Rule 611 or this Court's jurisprudence. More importantly, neither does defendant.

Second, the majority claims that these "initial questions were not logically relevant to a proper purpose under MRE 404(b) because they were not designed to elicit an answer contradicting any statements made by the witness on direct examination."[11] The majority, however, fails to explain why this line of questioning, and the "no" responses it produced, implicates Rule 404(b) in the first place.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[12] Even assuming that the prosecutor's questions "elicit[ed] propensity evidence" regarding defendant's "weapons-carrying proclivities,"[13] as the majority suggests, it is axiomatic that these questions, by themselves, were not evidence.[14] Rather,

---

[11] *Ante* at 6 (citation omitted).

[12] MRE 404(b)(1).

[13] *Ante* at 8.

[14] *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009); see also M Crim JI 3.5(2) ("Evidence includes only the sworn testimony of witnesses[, the exhibits admitted into evidence, and anything else I told you to consider as evidence]."); M Crim JI 2.7 ("The questions the lawyers ask the witnesses are not evidence. Only the answers are evidence. You should not think that something is true just because one of the lawyers asks questions that assume or suggest that it is."); M Crim JI 3.5(5) ("The lawyers' statements and arguments [and any commentary] are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the

9

it is the sworn testimony of the witness in response to those questions that constituted evidence; the prosecutor's questioning could be used only to give meaning to the witness's responses.[15]

In this case, the testimonial evidence adduced during cross-examination was that the witness did not know defendant to carry firearms. But by answering in the negative, how exactly does the witness's testimony of defendant not performing an act amount to evidence of defendant's "other acts" to implicate Rule 404(b)? The majority provides no answer to this question.[16] That is because, in my opinion, there is none.[17] It goes without

_____

evidence or by your own common sense and general knowledge. The lawyers' questions to the witnesses [, your questions to the witnesses,] and my questions to the witnesses are also not evidence. You should consider these questions only as they give meaning to the witnesses' answers.").

[15] *Mesik*, 285 Mich App at 541.

[16] The majority similarly states later in its opinion that "a prosecutor's attempt to elicit character evidence regarding the defendant on cross-examination of another witness is not permitted by MRE 404(a)(1)." *Ante* at 8-9. Rule 404(a)(1) provides:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . [e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted under subdivision (a)(2), evidence of a trait of character for aggression of the accused offered by the prosecution[.]

Again, the majority is mistaking questions with testimony when it comes to inadmissible evidence under Rule 404(a)(1).

[17] See, e.g., *Mesik*, 285 Mich App at 540-541 ("Had defendant confirmed, as a witness from the stand, any of the assertions by the prosecutor, those confirmations would have constituted evidence. But defendant only denied any recollection of the matters about which he was asked. Although the prosecutor's questions were, as noted, misleading and improper, the prosecutor's questions are not evidence and therefore cannot be hearsay.").

saying that without evidence of defendant's other crimes, wrongs, or acts, Rule 404(b) cannot be applied for purposes of determining admissibility.[18]

Accordingly, the trial court did not abuse its discretion by admitting this evidence because that decision fell within the range of principled outcomes and the witness's testimony was not inadmissible as a matter of law.

## B. DEFENDANT'S PRIOR CONVICTIONS WERE ADMISSIBLE FOR THE NONCHARACTER PURPOSE OF IMPEACHMENT UNDER RULE 404(b)

After responding that she did not know defendant to carry firearms, the prosecutor sought to impeach this testimony by asking the witness whether she knew of defendant's prior felony-firearm convictions from 2007 and 2010. The theory underlying this line of questioning was that if the witness knew of defendant's prior convictions for carrying a firearm, then she knew that defendant had previously carried firearms, which would be inconsistent with her prior testimony that she did not know defendant to carry firearms. Moreover, these questions sought to undermine the witness's credibility and knowledge of defendant generally, which she relied upon when testifying that defendant was left-handed and did not own or wear corduroy pants. So it goes, the witness responded to the prosecutor's questions in the affirmative.[19]

---

[18] The majority is correct that a question designed to elicit inadmissible evidence is objectionable. Thus, at most, the majority has provided an ample explanation for why defense counsel would have been justified in objecting to the prosecutor's initial questions. Counsel, however, did not object to these questions, and the witness did not testify about defendant's other acts. On the other hand, had the witness responded that she did know defendant to carry firearms, perhaps then the majority would be correct that such testimony was inadmissible under Rule 404(b). But that is not the case here.

[19] The distinction the witness drew in her testimony between knowing of defendant's prior felony-firearm convictions but not knowing that he, in fact, carried a firearm, while

11

Although this testimonial evidence regarding defendant's prior convictions would be inadmissible "to prove the character of [defendant] in order to show action in conformity therewith," Rule 404(b) provides that such evidence may be admitted for a purpose other than to show defendant's propensity to commit the crimes charged.[20] In this case, defendant's prior convictions were offered for a noncharacter purpose—impeachment.[21]

By seeking to introduce evidence of defendant's prior convictions in this case, the prosecutor was not attempting to solely establish either that defendant had a propensity for committing firearms-related crimes or that the prior convictions made it more likely

---

epistemologically interesting, does not negate the fact that the prosecutor had a good-faith purpose under Rule 404(b)(1) to seek to introduce testimonial evidence of defendant's prior convictions to impeach the witness and challenge her credibility.

[20] MRE 404(b)(1) ("Evidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case."). Because this rule favors the inclusion of evidence over its omission, we often refer to it as an inclusionary rule. See, e.g., *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993) (" 'Put simply, [Rule 404(b)] is *inclusionary* rather than exclusionary.' "), quoting *People v Engelman*, 434 Mich 204, 213; 453 NW2d 656 (1990). Accordingly, "[e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010). In other words, evidence susceptible to a prohibited propensity inference can still be admitted despite the rule, if it serves a valid purpose. *Rock v Crocker*, 499 Mich 247, 257; 884 NW2d 227 (2016); *Mardlin*, 487 Mich at 616.

[21] Although impeachment is not expressly listed as one of the examples in Rule 404(b)(1), this Court has repeatedly held that this list is nonexhaustive in nature. See *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015).

12

that defendant committed the crimes for which he was on trial. Instead, this evidence was used to impeach the witness's prior testimony that she did not know defendant to carry firearms. For this reason alone, defendant's prior convictions were admissible under Rule 404(b).

Again, this use of defendant's prior convictions may have been unusual, but it was still permissible under Rule 404(b). Although the majority looks disapprovingly upon the prosecutor's tactic and believes this conclusion would somehow "eviscerate Rule 404,"[22] it is the correct outcome given the plain language of that rule.[23]

## C. THE PROSECUTOR'S QUESTIONS SERVED A VALID NONPROPENSITY PURPOSE WHEN CONSIDERING THE TOTALITY OF THE CIRCUMSTANCES

A broader and more general point bears discussion as well. Impeachment need not be as obvious as using a single question to point out an inconsistency. It can be as subtle as showing that evidence, apparently credible, is actually anything but when all the facts are laid before the jury.[24] The prosecutor's questions, regardless of whether they were or were not evidence, were clearly designed to impeach the witness's credibility and

---

[22] *Ante* at 10.

[23] This is not to say that defendant's prior convictions could not have been found to be inadmissible under another rule of evidence. For instance, Rule 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. But defendant failed to provide any meaningful analysis in either his application for leave to appeal in this Court or his supplemental brief to explain why the impeachment evidence in this case is unfairly prejudicial *and* how that prejudice substantially outweighs the probative value.

[24] See generally *Behler v Hanlon*, 199 FRD 553, 556 (D Md, 2001) (observing the multitude of ways to impeach a witness and that the rules of evidence were not designed to narrow the range of permissible methods).

13

veracity, particularly when they are viewed in the context of the witness's entire testimony.

Throughout direct examination, defense counsel elicited more from the witness than simply whether defendant left the house with a gun on the day in question; counsel also implied that this witness was a credible source of this information by tacitly suggesting that the jury could trust this witness with regard to what defendant did or did not have in his possession:

> *Q.* . . . Ms. Wilder, do you know somebody named Darrell Wilder?
>
> *A.* Yes.
>
> *Q.* And how do you know him?
>
> *A.* He's my husband.
>
> *Q.* And how long have you been married?
>
> *A.* We've been married nine years. . . .
>
> *Q.* And back on May 16, 2014 [the date in question], what was the status of your relationship with Mr. Wilder?
>
> *A.* Married still.
>
> *Q.* Okay. And were you living together on that day?
>
> *A.* Yes.
>
> *Q.* And on that day was Mr. Wilder at the house with you?
>
> *A.* Yes.
>
> \* \* \*
>
> *Q.* Okay. And when you see your husband leave the house did you see him with a gun?
>
> *A.* No.

*Q.* To your knowledge, do[es] he own a gun?

*A.* No.

*Q.* Do you have any weapons in your house?

*A.* No . . .

*Q.* And Mr.—your husband, do you know whether he's left-handed or right handed . . .

*A.* He's left.

*Q.* How do you know?

*A.* Because I've been with him for sixteen years.

There was nothing wrong with defense counsel's approach; it is elemental to present the witness in a favorable light to make her testimony appear more truthful than not. Counsel's approach, however, was built on an incomplete presentation of the facts. The prosecutor knew this, which is why, on cross-examination, she understandably sought to rebut the inference:

*Q.* All right. You've been married to him for nine years; is that correct?

*A.* Yes.

*Q.* Would you agree with me that you have an off and on type relationship, right?

*A.* Yes.

*Q.* In fact, he has other children by other women, correct?

[*Defense counsel*]. Relevance, you[r] Honor? Objection, relevance.

[*The Court*]. How is that relevant?

[*Prosecutor*]. Well, Judge, it's my position that he doesn't always stay with her that at the apartment that she testified

15

that she lives in so she doesn't know what he may be doing or what type of weapon he may possess.

[*The Court*].  Overruled.

\* \* \*

*Q*.  And how long before May—had Mr. Wilder been living with you for a period of time before May 16th?

*A*.  Yes.  Like it's been off and on because we were trying to work on our marriage.

*Q*.  Okay.  When you say off and on, how long had he been living at your apartment on the eastside of Detroit?

*A*.  For about a month.

*Q*.  And you'd agree with me that he didn't have all his things at your home, correct?

*A*.  No.  He had most of them, yeah.  He had most of them.

\* \* \*

*Q*.  Now you were asked whether or not Mr. Wilder had a weapon with him on that day?

*A*.  Yes.

*Q*.  Okay.  You don't know where he went?  You didn't see where he went after he left your apartment on the eastside of Detroit, did you?

*A*.  No.

*Q*.  Do you know of Mr. Wilder to carry weapons?

*A*.  No.

*Q*.  Do you know of him to carry guns?

*A*.  No.

*Q*.  You've been with him for nine years and you don't know of him to carry guns?

*A*.  No.

16

Evident from this line of questioning was the prosecutor's tactic of trying to rebut an inference that the witness was a credible source of information about defendant and, therefore, it served the valid purpose of impeaching the witness's credibility in general. Because this case turned on the issue of whether defendant carried or possessed the hand-held firearm before placing it in the trunk of the car, the purported relevance of the witness's testimony that she did not observe defendant leave the house with a firearm was that it made this crucial fact at trial less likely. Because defense counsel's questioning inferentially portrayed the witness as a credible source of this information, it is reasonable to conclude that the jury would have been more likely to believe the witness.

But if defendant kept other houses and their marriage was often on the rocks, then perhaps the witness did not know as much as she suggested by her testimony on direct examination. Moreover, if the witness knew that defendant typically carried firearms, the witness's blanket denial that defendant even possessed a firearm, coupled with these other omitted facts, would appear to be disingenuous, perhaps even dishonest. This is precisely what the prosecutor's questions were attempting to demonstrate: that, through the witness's testimony, defense counsel was portraying half-truths as the complete factual circumstances.[25]

This calculus does not change merely because the prosecutor was attempting to impeach an inference rather than direct testimony. Indirect inferences can be as probative

---

[25] Contra *ante* at 6 (suggesting that the prosecutor's questions were only logically relevant if they were designed to elicit an answer directly contradicting statements made by the witness during direct examination).

and reliable as direct evidence.[26]  Parties are even free to build inferences upon inferences

for the jury to consider, if they are logically relevant.[27]  Accordingly, where testimony is

given by a witness on direct examination from which an inference arises favorable to the

producing party, surely anything within the knowledge of the witness tending to rebut

that inference is admissible.  This is the very essence of impeachment.[28]

Because the prosecutor's questions served a valid nonpropensity purpose, Rule

404(b) did not bar the witness's testimony concerning defendant's prior convictions.

And because the witness continued to deny knowing whether defendant ever carried

firearms, the prosecutor was entitled to ask the trial court whether she could impeach the

witness with questions about defendant's prior convictions.  That is not to say that the

prosecutor's initial questions did not carry with them a risk that the jury would consider

the witness's answers as proof of defendant's alleged criminal tendencies.  That risk was

---

[26] See *Matras v Amoco Oil Co*, 424 Mich 675, 683; 385 NW2d 586 (1986).

[27] *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002); see also *VanderVliet*, 444 Mich at 61 (noting disagreement with the idea that an inference could not be based on another inference).

[28] Nor is there anything revolutionary about this statement.  See *Campau v Dewey*, 9 Mich 381, 414 (1861) ("By this course of inquiry, the plaintiffs had made the identity of all the reservees a question in some degree pertinent to the case, if indeed it were not so before; and opened this whole field of inquiry to cross-examination by the defendants; for, if the plaintiffs could inquire into the names and family connections of the various reservees, for the purpose of strengthening the inference of identity, and to gain a higher degree of credit for their witness, by showing extensive familiarity with, and a clear memory of the facts, the defendants must be allowed to cross-examine him at large upon the same general subjects, for the purpose of weakening the inference from his direct evidence, and to diminish the credit otherwise due to his testimony, by exposing the imperfection of his knowledge and the confusion of his memory.").

18

very real. But Rule 404(b) does not apply simply because evidence carries a risk of propensity reasoning. Rather, it only applies when evidence is offered that has *no other* valid purpose.[29]

## IV. CONCLUSION

For these reasons, I believe the Court of Appeals correctly concluded that the defense witness's testimonial evidence concerning her knowledge of defendant's prior weapons convictions was admissible under Rule 404(b). Because there is no need to remand this case to the Court of Appeals to conduct a harmless-error analysis, I respectfully dissent.

Brian K. Zahra
Stephen J. Markman
Kurtis T. Wilder

---

[29] *Rock*, 499 Mich at 257; *Mardlin*, 487 Mich at 616.

19