*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA LEE DUFEK,

        Defendant-Appellant.

UNPUBLISHED
June 10, 2021

No. 349918
Wayne Circuit Court
LC No. 18-007516-01-FC

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC) (victim less than 13 years old and defendant 17 years or older), MCL 750.520b(2)(b). Defendant was sentenced to 25 to 30 years' imprisonment for each count of first-degree CSC. We affirm defendant's convictions and sentences, but vacate the order of $1,300 in court costs in the judgment of sentence as well as the late fee assessment, and remand the matter for the establishment of a factual basis for court costs and a due date for the payment of court-ordered costs and fees.

This matter arises from allegations of sexual abuse against defendant made by his daughter, AD, when she was seven years old and resided with defendant and his then wife, Sara Mullins, for several months. AD said that when she was afraid of the dark, defendant came into her room to help her fall asleep. After rubbing her back, defendant penetrated AD's vagina with either his fingers or his penis. This occurred several times. AD disclosed these allegations to her mother, Trisha Sweet, three years later after learning what sex was. Defendant denied sexually assaulting AD. Defendant was charged with two counts of first-degree CSC, penetration with penis, in Counts I and II, and two counts of first-degree CSC, digital penetration, in Counts III and IV. Defendant was convicted of Counts III and IV by the jury, and Counts I and II were dismissed as the result of a hung jury.

## I. OTHER-ACTS EVIDENCE

The trial court did not commit plain error affecting defendant's substantial rights when it allowed Sweet to testify regarding other allegations of sexual abuse by defendant after defense counsel opened the door to this testimony on cross-examination.

Typically, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Here, defense counsel questioned Sweet about other allegations of abuse against defendant during cross-examination, defense counsel tried to retract the question, and the court allowed Sweet to answer. However, "[t]o preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Defendant did not preserve the constitutional argument he now makes on appeal—that the admission of the evidence violated his right to a fair trial—because he did not raise that argument in the trial court as a ground for excluding the evidence. *Id.*

A trial court's decision to admit or exclude evidence is typically reviewed for an abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "A trial court abuses its discretion when its decision falls 'outside the range of principled outcomes.' " *Id.* (citation omitted). However, unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; and (3) that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (citation and quotation marks omitted; last alteration in original).

Defendant argues that the trial court committed error requiring reversal when it allowed Sweet to testify regarding other-acts evidence because it was inadmissible hearsay and highly prejudicial. Sweet was called as the prosecution's second witness on the second day of trial. During cross-examination by defense counsel, the following exchange occurred:

> [*Defense Counsel*]: Did you ever hear from any other third parties, other than your daughter, which—whom you allege said so, did you ever hear from any other third parties that my client molested any girls, including your daughter?

> [*Sweet*]: Yes.

> [*Defense Counsel*]: Who told you that?

> [*Prosecutor*]: Judge, now we're getting into—

*The Court*:  (Interposing) Yeah, well, she asked the question, so there you go.

[*Prosecutor*]:  Okay.

*The Court*:  So, go ahead, answer the question.

[*Sweet*]:  I didn't hear what she said.

[*Defense Counsel*]:  I asked if you've ever heard any third parties claim that my client molested [AD]?

[*Sweet*]:  That's not what you asked.

[*Defense Counsel*]:  I thought you said you didn't hear my question.  Now you heard it, and it's not what I asked?

[*Sweet*]:  (No response)

[*Defense Counsel*]:  Can you please tell the truth and answer my question?

[*Sweet*]:  Yes.  You asked me had I heard any other third party person claim that your client molested any other girl?

[*Defense Counsel*]:  Have you ever heard—I will withdraw that question and rephrase it.

*The Court*:  No, no.  You—you'll have to take an answer, now.  You asked it, and she understands what the question is, now.

Answer it.

[*Defense Counsel*]:  So, now, she heard it.

[*Sweet*]:  Yes; yes, I have.

*The Court*:  Okay.

[*Defense Counsel*]:  And have you ever made any reports to the police, or complaints?

[*Sweet*]:  No.

During redirect examination, the prosecutor asked the court whether she could ask Sweet about this testimony, and the court allowed it.

[*Prosecutor*]:  Your Honor, will the Court allow me to ask questions based on the—

*The Court*:  (Interposing) Any door that was opened on cross, yes.

[*Prosecutor*]:  All right.

[*Prosecutor*]:  Ms. Sweet, when did you hear about the defendant molesting another girl?

[*Sweet*]:  It was, I wanna' say, Sept—I believe it was September, of 2018. I'm not positive on the date.

[*Prosecutor*]:  Okay.  So, was that after [AD] had told you that she had been molested by the defendant?

[*Sweet*]:  Yes.

[*Prosecutor*]:  And who did you hear that from?

[*Sweet*]:  [Defendant's] sister, Haley.

[*Prosecutor*]:  Okay.  And was that when [defendant's] sister was a child, or was—was she an adult?

[*Sweet*]:  She was a child.

*The Court*:  Well, I don't—is that who she heard it from, or is that who the complainant or the victim was?

[*Prosecutor*]:  I'll ask the same question.

[*Prosecutor*]:  Did you hear it from Haley Dufek, or was the victim Haley Dufek?

[*Sweet*]:  Both.

[*Prosecutor*]:  Okay.  And was Haley Dufek a child when the sexual assault happened?

[*Sweet*]:  Yes.

Outside the presence of the jury, the prosecutor again discussed the topic.

[*Prosecutor*]:  . . . .  As the Court is aware, with the last witness, Tricia Sweet, the defense asked a question about other sexual acts of the defendant.  And I just wanted to let the Court know, and defense counsel know, that I do not plan on using that in closing.  I'm not sure that it ever should have really been brought out, and I don't intend on using it any further, or mentioning it, at all.

*The Court*: So, in other words, that doesn't need to be explored any further, Ms. Schlussel [defense counsel]. I think probably the less said about that, the better, at this point.

[*Defense Counsel*]: While I agree, your Honor, I think I do have to clear the air on it and let my client respond to it.

*The Court*: Let your client respond to it?

[*Defense Counsel*]: Yes.

*The Court*: You know, I don't know why you asked the question that you asked because it opened a door that would never otherwise be opened. And by having your client talk about it, at all, is just like throwing the door open, again, and I'm not sure you really want to do that.

[*Defense Counsel*]: Okay. Thank you, your Honor.

MRE 404(b) precludes the admission of evidence of a defendant's other crimes, wrongs, or acts for the purpose of showing the defendant's propensity to commit a crime. However, a defendant "opens the door" to admission of typically inadmissible evidence when the defendant inquires about or refers to such evidence. After that, the prosecution may properly introduce evidence in response to the evidence and impressions raised by the defendant. *People v Figgures*, 451 Mich 390, 399-400; 547 NW2d 673 (1996). Moreover, a "[d]efendant cannot complain of [the] admission of testimony which [the] defendant invited or instigated." *People v Whetstone*, 119 Mich App 546, 554; 326 NW2d 552 (1982). See also *People v McMaster*, 154 Mich App 564, 570; 398 NW2d 469 (1986) (It is well established that "[w]here a defendant raises the issue of his prior bad acts, he has waived any claim of error.").

Here, defendant opened the door when defense counsel asked Sweet on cross-examination whether she was aware of any third parties making allegations that defendant sexually abused any other girls. After that, the prosecution was allowed to question Sweet on redirect regarding the allegations, *Figgures*, 451 Mich at 399-400, and the other-acts evidence regarding the other allegations of sexual abuse was properly admitted. See *People v Horn*, 279 Mich App 31, 35-36; 755 NW2d 212 (2008) (other-acts evidence was properly admitted once the defendant opened the door by inquiring on the issue). The trial court did not commit a plain error affecting defendant's substantial rights by admitting into evidence the other-acts evidence.

## II. EXCLUSION OF WITNESS AT TRIAL

As noted above, for an issue to be preserved for appellate review, it must be raised, addressed, and decided by the trial court. *Metamora Water Serv, Inc*, 276 Mich App at 382. Defense counsel called Lynzey Board as a witness even though Board was not listed on defendant's witness list, and the court denied this request. Therefore, this issue is preserved and reviewed for an abuse of discretion. *Id*. However, defendant's constitutional argument that the preclusion of Board testifying denied him a fair trial is unpreserved because defendant did not raise this as a ground for allowing Board to testify, *Stimage*, 202 Mich App at 30, and is reviewed for plain error affecting substantial rights, *King*, 297 Mich App at 472.

-5-

Under MCL 767.94a(1)(a), the defendant or his attorney is required to disclose to the prosecution upon request "[t]he name and last known address of each witness other than the defendant whom the defendant intends to call at trial provided the witness is not listed by the prosecuting attorney." MCR 6.201(F) requires both parties to comply with discovery within 21 days of a discovery request, and MCR 6.201(J) provides that if a party fails to comply with the court rule, the court, within its discretion, may "prohibit the party from introducing in evidence the material not disclosed . . . ." "Whether to permit an undisclosed witness to testify is within the trial court's discretion." *Jernigan v Gen Motors Corp*, 180 Mich App 575, 584; 447 NW2d 822 (1989). The trial court does not abuse its discretion in precluding witnesses from testifying where the party fails to state good cause for failing to list a witness on the witness list, or fails to make a separate record to demonstrate the importance of the witness's testimony. *Id*. at 585.

Here, defense counsel admitted that the failure to list Board on the witness list was due to her own inadvertence, and the trial court did not find that defense counsel's eye surgery was good cause for her failure to list Board. Thus, defense counsel failed to comply with MCR 6.201(F), and it was within the court's discretion to preclude Board from testifying, MCR 6.201(J). It was therefore not an abuse of discretion for the trial court to deny defendant's request to call Board to testify, *Feezel*, 486 Mich at 192, nor a plain error affecting defendant's substantial rights, *King*, 297 Mich App at 472.

Defendant asserts on appeal that the trial court's perceived error was compounded by the playing of a jail call between defendant and Board during trial. This argument lacks merit as the prosecution never moved for admission of the call because, as the trial court remarked, defendant could not be heard or understood in the call. Because the jail call was indecipherable and the prosecution withdrew the jail call, there was no plain error affecting defendant's substantial rights in the trial court's refusal to allow Board to testify. *Id*.

III. HEARSAY EVIDENCE

Although the trial court abused its discretion in allowing the hearsay testimony into evidence under MRE 803A, this was harmless error.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Aldrich*, 246 Mich App at 113. Defense counsel objected on the grounds of hearsay when Sweet was testifying about AD disclosing the allegations of sexual abuse to Sweet. Therefore, this issue is preserved. *Id*. The trial court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion. *Feezel*, 486 Mich at 192. An abuse of discretion occurs when the trial court's decision is " 'outside the range of principled outcomes.' " *Id*. (citation omitted).

Defendant argues that the trial court committed error requiring reversal when it admitted into evidence hearsay statements under MRE 803A. During direct examination of Sweet by the prosecutor, Sweet testified that when she took AD to the doctor for AD's urinary tract infection (UTI), the doctor asked if AD was sexually active. This led to AD's disclosure of the sexual abuse:

> [*Sweet*]: And then, after that, for the next weeks, my daughter kept asking me what sex was.

[*Defense Counsel*]: Objection, your Honor, hearsay.

[*Prosecutor*]: That's also still a question, actually, so—

*The Court*: (Interposing) The doctor asking her? It's not.

[*Defense Counsel*]: No. I'm sorry, your Honor. I was objecting to what her daughter said.

[*Prosecutor*]: Well, the daughter was also—

*The Court*: (Interposing) Well, no, the daughter's testimony actually comes in under 803(A), I think.

[*Prosecutor*]: Also true, because she was under eleven, so—

*The Court*: Okay.

Go ahead.

Sweet then testified that she had "the sex talk" with AD, and a few days later AD said to Sweet, " 'Remember the talk we had two days ago?' . . . . 'My dad did that to me [].' "

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *People v McLaughlin*, 258 Mich App 635, 651; 672 NW2d 860 (2003), quoting MRE 801(c). "Hearsay is not admissible except as provided by the rules of evidence." *McLaughlin*, 258 Mich App at 651, citing MRE 802. The hearsay exception relevant here is MRE 803A, which provides in relevant part:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.

In *People v Gursky*, 486 Mich 596, 598; 786 NW2d 579 (2010), the defendant was convicted of four counts of first-degree CSC for sexually abusing a child, and the child's

statements to a third party were admitted at trial over the defendant's objection. On appeal, the Supreme Court determined that the child's statements were not spontaneous, and therefore should not have been admitted under the exception in MRE 803A, because they were prompted by an adult's questioning specifically concerning sexual abuse. *Id*. at 618. Nonetheless, the admission of the statements was harmless error. *Id*. at 598-599.[1]

In this matter, the trial court abused its discretion in admitting Sweet's testimony of AD's hearsay statements under MRE 803A(1) because AD was 10 years old when she made the statements. Thus, the trial court misapplied the exception in MRE 803A to allow the hearsay evidence into the record. However, this was harmless error under *Gursky*, as the hearsay statement was not offered or argued as substantive proof of defendant's guilt, but rather, to corroborate AD's testimony. *Id*. at 619-626. The hearsay statement was cumulative to AD's own direct testimony at trial, which was subject to cross-examination. *Id*. at 620. AD also testified that after she and Sweet had the sex talk, she told Sweet that that was what defendant did to her. Therefore, defendant has not met his burden that but for the fact that Sweet testified regarding AD's disclosure of abuse, it is more probable than not that a different outcome would have occurred. *Id*. at 621; MCL 769.26. Reversal of defendant's convictions is not warranted. *Gursky*, 486 Mich at 626.

IV. PROSECUTORIAL ERROR

Defendant has not established that the prosecutor committed error[2] denying defendant of a fair and impartial trial.

A defendant must timely and specifically object to allegedly improper conduct by the prosecutor during trial, and request a curative instruction, to preserve a claim for prosecutorial error. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010); *People v Barber*, 255 Mich App 288, 296; 659 NW2d 674 (2003); Defense counsel objected during the prosecutor's closing argument when she began discussing the medical records, thereby preserving this issue.

---

[1] MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

"The burden is on the defendant to show that the error resulted in a miscarriage of justice." *Gursky*, 486 Mich at 619. If the defendant fails to meet this burden, the error is deemed harmless, and reversal of the conviction is not merited. *Id*.

[2] This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a more appropriate label for most claims of prosecutorial misconduct would be " 'prosecutorial error,' " while only the most extreme cases rise to the level of " 'prosecutorial misconduct.' "

*Barber*, 225 Mich App at 296. However, defense counsel did not object to the remaining instances of prosecutorial error alleged by defendant on appeal, and those assertions are not preserved. *Id.*

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "Clear error exists where the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Callon*, 256 Mich App 312, 321; 662 NW2d 501 (2003). Because defendant's claim of prosecutorial error regarding the prosecutor's statements during closing argument about AD's medical records is preserved, *Barber*, 225 Mich App at 296, it is reviewed de novo, and the court's factual findings are reviewed for clear error, *Brown*, 279 Mich App at 134. Because the remainder of defendant's allegations of prosecutorial error are unpreserved, they are reviewed for plain error. *Barber*, 225 Mich App at 296.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court reviews prosecutorial error on a case-by-case basis by examining the record and the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). The prosecutor's comments must be read as a whole, and evaluated by this Court in light of the defendant's arguments, and the relationship the comments bear to the admitted evidence. *Brown*, 279 Mich App at 135.

## A. MEDICAL CONCLUSIONS

During closing argument, the prosecutor said that Sweet brought AD to the hospital on January 10, 2018, after AD made the disclosure of sexual abuse. It appears from the record that AD's medical records were projected on a screen for the jury to see during closing argument. The prosecutor continued:

> External genital—genitalia scan was normal, hymen perforated, no bruising, no arrhythmia, no swelling, no vaginal discharge.
>
> * * *
>
> The external genitalia exam shows perforated hymen, would be consistent with sexual abuse, or could be a normal finding for a ten year old female. No vaginal discharge: gonorrhea, chlamydia. All the mother's questions were answered. Exam was inconclusive for abuse.
>
> Here's the thing. If these medical records happened in a vacuum, it could have been a normal finding. But this happened after [AD] already disclosed sexual abuse, and these medical records corroborate the fact that she said that her dad did it to her.
>
> And female genitalia does not have to be ripped, especially when it's three to three and a half years later.

Defense counsel objected because "there was no medical testimony as to that," and the Court sustained the objection, though it noted that defense counsel had discussed medical evidence in her opening statement.

Once the trial court sustained defense counsel's objection, the prosecutor went no further in discussing any more medical conclusions that were not based in evidence admitted at trial. The prosecutor clarified that she was responding to defense counsel's opening statement, and argued that the medical records admitted into evidence corroborated AD's testimony. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64. "Under the doctrine of invited response, the proportionality of the response, as well as the invitation, must be considered to determine whether the error, which might otherwise require reversal, is shielded from appellate relief." *People v Jones*, 468 Mich 345, 353; 662 NW2d 376 (2003). Although the prosecutor's statement that "female genitalia does not have to be ripped, especially when it's three to three and a half years later" was not supported by facts in the evidence, taken in context, the statement did not deprive defendant of a fair and impartial trial because it was made in response to defense counsel's opening statement, and the medical records were in evidence. *Dobek*, 274 Mich App at 64; *Jones*, 468 Mich at 353.

## B. OTHER-ACTS EVIDENCE

As we concluded above in section I, defense counsel opened the door to admission of other-acts evidence when she asked Sweet on cross-examination whether Sweet was aware of any third parties making allegations that defendant sexually abused any other girls. Thus, there was no plain error affecting defendant's substantial rights when the prosecutor questioned Sweet about these allegations, *Carines*, 460 Mich at 763, and no prosecutorial error denying defendant a fair and impartial trial, *Dobek*, 274 Mich App at 63.

## C. ALLEGED EXPERT TESTIMONY

Defendant alleges that the prosecutor improperly elicited expert testimony from Detective John Munson when he was not qualified as an expert at trial, which "boosted" AD's credibility. Munson testified that he had been with the Inkster Police Department for 21 years, that he was assigned as officer in charge of defendant's case, and as part of his investigation, he reviewed AD's interview with the forensic examiner, and met with Sweet and defendant. The prosecutor asked how many sexual assault cases with child victims he had worked on, and Munson estimated over 100. Then the prosecutor asked:

> *Q.* Okay. And is there one way that—that child victims of sexual assault typically act?
>
> *A.* No. Every person is different, every child is different. Their response to trauma, and their ability to talk about it, varies widely.
>
> *Q.* And when you were watching [AD] testify, was her response unusual for a victim of sexual assault?
>
> *A.* No.

Testimony by lay witnesses is governed by MRE 701, which provides, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Expert testimony is governed by MRE 702:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *Dobek*, 274 Mich App at 76. The *Dobek* Court faced a similar issue when the defendant argued that the prosecutor committed misconduct when he elicited testimony from a detective regarding " 'delayed disclosure' " in a child sexual assault case without the detective being qualified as an expert. *Id*. at 76. The *Dobek* Court discussed conflicting caselaw on the matter, and ultimately concluded that the prosecutor did not pursue the questioning in bad faith. *Id*. at 79.

> Assuming that expert testimony was required, [the detective] was more than qualified to give an expert opinion on delayed disclosure to the extent of the testimony actually presented. He testified at length about his extensive knowledge, experience, training, and education concerning the sexual abuse of children. [The detective] has personally participated in the investigation of hundreds of criminal sexual conduct cases involving child victims. And he had received training in the investigation of cases involving delayed disclosure. With his background and experience in investigating child sex abuse cases and interviewing victims, [the detective] became knowledgeable regarding delayed disclosure, and, according to [the detective], delayed disclosure is common and happens quite frequently with child victims. On this record, the disputed testimony was admissible, and the prosecutor acted in good faith in eliciting the testimony. Accordingly, reversal is unwarranted. [*Id*. (footnotes omitted).]

Here, Munson did not testify as extensively to his knowledge or background in cases of child sexual abuse as did the detective in *Dobek*; however, assuming expert testimony was required about the typical way that victims of child sexual assault act, Munson was sufficiently qualified to give this testimony. *Id*. He had been with the Inkster Police Department for over 21 years, and had worked on over 100 child sexual assault cases. The testimony about AD's response was admissible, and the prosecutor acted in good faith in eliciting it, *id*., so defendant cannot establish a plain error affecting his substantial rights, *Carines*, 460 Mich at 763.

## D. BROAD CONCLUSIONS ABOUT CHILD MOLESTERS

Defendant argues that the prosecutor presented her own "improper expert testimony" regarding the tendencies and behaviors of child molesters, and there was no evidence to support her remarks. The following statements were made by the prosecutor during closing argument:

> The defendant said: "I was never alone with the kids."

> Any parent, here, can tell you that of course you're alone with you[r] kids. *The only people who are not alone with their kids are the ones who think that they might sexually assault them.* Every parent is alone with their kids when they have custody over them, and when they have control over them.

> He would say, a couple—the defendant said, a couple of times: "[Mullins] would get me because [AD] had a nightmare. And I would sit next to the bed, never on the bed."

> *The only fathers who have to tell a detective that: "I would never sit on the bed with my daughter," are the ones who get in bed with them and then put their fingers or penis inside of them.* [(Emphasis added).]

> * * *

> To this day, the only people who knew about [defendant] going into her room were him and her, the defendant and [AD]. No one else knew about this.

> *Sexual assault does not happen in the public. Child molesters do not talk about molesting children with other people.* Of course this was a secret, and of course no one else would know about it. [(Emphasis added.)]

As noted above, improper prosecutorial comments may not require reversal if they address issues raised by the defense. *Dobek*, 274 Mich App at 64; *Jones*, 468 Mich at 353. A witness for the defense, Liz Gilmore, testified as to general tendencies of child molesters because she was molested as a child. Thus, read in context, the prosecutor's statements were in response to evidence elicited by defense counsel, and therefore, were not a plain error affecting defendant's substantial rights. *Carines,* 460 Mich at 763.

Additionally, defendant testified that he was never alone with the kids, or sat on AD's bed. He told Munson the same thing during his recorded interview that was played for the jury, and Mullins testified that defendant was never alone with the children. Gary Martin, defendant's friend who lived in the apartment while AD stayed there, testified that defendant never discussed molesting children with him. Thus, several of the noted comments made by the prosecutor during closing argument were grounded in facts in evidence. Defendant takes issue with the italicized statements above, arguing that "[t]here was no evidence introduced at trial to support these sweeping claims." "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 65. The prosecutor's statements, read in context, were made to support her theory of the case—that defendant was lying and that his

-12-

statements evinced guilt. As such, there was no prosecutorial error and no plain error affecting defendant's substantial rights in these statements made during closing argument. *Carines,* 460 Mich at 763.

## E. ARGUING FACTS NOT IN EVIDENCE

Also during closing argument, the prosecutor stated:

> [AD] told the same facts to the doctor, to the forensic examiner, at the preliminary exam, and here at trial. And, again, you know that because the defense attorney was not able to impeach her with any of the other evidence.

Defendant argues that these were facts not in evidence, and were inadmissible hearsay that bolstered AD's credibility.

As an initial matter, the parties stipulated to the admission of AD's medical records at trial. AD's medical records include a summary of AD's statement to the medical provider, including that AD "presents with a chief complaint of proximal sexual assault [three] years ago. . . . She states on [three to four] occasions her father touched her down below. When asked without prompting she pointed to her vagina. She states both his hand and twice with his penis." Thus, the prosecutor's statement that AD told the same facts to the doctor that she stated at trial was based on the record evidence.

Defendant argues that the prosecutor's statement that AD told the same set of facts to the forensic interviewer and at the preliminary examination as at trial is prosecutorial error because neither AD's testimony at the preliminary examination nor her statement to the forensic interviewer were admitted in evidence. However, when the prosecutor's entire statement is read in context, she said that the fact that AD told the same facts to the forensic interviewer and at the preliminary examination was evidenced by defense counsel's failure to impeach AD with those previous statements. In other words, because defense counsel failed to impeach AD, her statements were consistent.

"A prosecutor may not vouch for the credibility of his or her witnesses." *Bennett*, 290 Mich App at 478. "However, a prosecutor may comment on his or her own witnesses' credibility, especially when credibility is at issue. The prosecutor is free to argue from the evidence and its reasonable inferences in support of a witness's credibility." *Id*. (citations omitted). However, "[t]he prosecutor must refrain from commenting on his or her personal knowledge or belief regarding the truthfulness of the . . . witnesses, or convey[ing] a message to the jury that the prosecutor had some special knowledge or facts indicating the witness' truthfulness." *Id*. (quotation marks and citations omitted).

Read in context, the prosecutor was not actually arguing a fact in evidence. She was arguing that based on reasonable inferences from the evidence presented, and defense counsel's failure to impeach AD, that AD was credible. This was permissible as the prosecutor did not assert that she had any personal knowledge or belief as to AD's credibility. See *id*. As such, defendant cannot demonstrate that this statement deprived him of a fair and impartial trial, *Dobek*, 274 Mich App at 63, nor can he demonstrate a plain error affecting his substantial rights, *Carines,* 460 Mich at 763.

-13-

## F. MISQUOTING DEFENDANT

Lastly, defendant argues that the prosecutor improperly bolstered AD's credibility by misquoting defendant throughout trial. During defendant's interview with Munson, Munson asked defendant if AD had ever lied before. Defendant replied, "Not of this nature," but said that AD had lied about "stupid things" or "kid things" in the past. The prosecutor said during her opening statement: "And the best thing [defendant] says is at the very end, when he says: '[AD] has never lied about anything serious.' Her own dad admits that she's never lied about anything serious." During cross-examination of defendant, defendant admitted that AD never lied about anything "serious."

Defendant argues that because the prosecutor misquoted defendant during closing argument in saying that defendant said that AD was "trustworthy," that this amounts to improper bolstering because the defense did not attack AD's character for truthfulness. This argument lacks merit. A prosecutor cannot vouch for the prosecution's witness, but may comment on the witness's credibility when credibility is at issue. *Bennett*, 290 Mich App at 478. The prosecutor may argue from the evidence and any reasonable inferences arising therefrom to support a witness's credibility. *Id.* That is what the prosecutor did here. Defendant told Munson during his interview—and confirmed at trial—that he said that AD had not lied about anything of this nature before. It was a reasonable inference for the prosecution to argue that AD was therefore "trustworthy," and it is immaterial that the prosecutor paraphrased defendant's testimony to say that AD was "trustworthy." *Id.* The prosecutor made no comments of her own personal or special knowledge of AD's veracity for truthfulness. *Id.* Therefore, defendant cannot demonstrate that the prosecutor's comments denied him of a fair or impartial trial, *Dobek*, 274 Mich App at 63, nor can he demonstrate a plain error affecting his substantial rights, *Carines,* 460 Mich at 763.

## V. JUDICIAL BIAS

Defendant has failed to demonstrate that any judicial bias denied him a fair trial, or that the trial court committed any plain error affecting his substantial rights.

To preserve an issue of judicial impartiality, the party must object to the alleged biased conduct at trial. *People v Stevens*, 498 Mich 162, 180 & n 6; 869 NW2d 233 (2015). Defense counsel did not object during the questioning of Sweet regarding the other-acts evidence, during the questioning of Sweet when the trial court made a comment about a "conspiracy theory," or when the trial court delivered the deadlocked jury instruction. Therefore, this issue is not preserved for appeal, *id.*, and is reviewed for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

"A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.*

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's

conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*.]

"A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. at 171. "Ultimately, the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id*. at 171-172.

The reviewing court should also consider "the nature or type of judicial conduct itself." *Id*. at 172. "Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173. The tone and demeanor of the trial judge displayed in front of the jury should be considered because jurors look to the judge for guidance and instruction, and "are very prone to follow the slightest indication of bias or prejudice." *Id*. at 174 (quotation marks and citation omitted). It is assumed that a trial judge is impartial. *Id*. at 175. The reviewing court should consider "the scope of judicial intervention within the context of the length and complexity of the trial, or any given issue therein," *id*. at 176, as well as "the extent to which a judge's comments or questions were directed at one side more than the other," *id*. at 176-177.

## A. OTHER-ACTS EVIDENCE

As repeatedly noted, defense counsel opened the door to the other-acts evidence during cross-examination of Sweet when she asked whether Sweet had heard from any third parties whether defendant "molested any girls, including your daughter." The prosecution was therefore allowed to question Sweet on redirect regarding the allegations. *Figgures*, 451 Mich at 399-400. Thus, there was no plain error affecting defendant's substantial rights, and no showing of judicial partiality when the trial court ruled on this evidentiary matter. *Stevens*, 498 Mich at 164.

When the prosecutor elicited more details on the other allegations of sexual abuse during redirect examination of Sweet, the court asked for clarification regarding whether Haley was the person that Sweet heard the allegations from, or whether Haley was the victim. Sweet responded, "Both." "The court may interrogate witnesses, whether called by itself or by a party." MRE 614(b). "[T]he central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173 (citations omitted). That is what the trial court did here. Therefore, the court's question of Sweet was not a plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763, nor an instance of judicial partiality.

## B. ERRANT REMARKS BY TRIAL COURT

Defendant next argues that the trial court erred by limiting defense counsel's questioning of Sweet on cross-examination, and that the trial court's disparaging comment discredited defense counsel. During cross-examination of Sweet, the following exchange occurred:

[*Defense Counsel*]: All right. Did you ever leave your child alone in a hotel or motel room?

[*Prosecutor*]: Objection, relevance.

[*Defense Counsel*]: Your Honor, I want to get to who might have touched her.

*The Court*: Well, the only evidence that we have in front of us, right now, is the testimony of the mother and the child. There is no other evidence that I'm aware of that anybody else may have done that. And even if somebody else did it, that doesn't present a defense for your client, either. So, I don't see what relevance it possibly can have. You know, you may have that theory in mind, but I don't know how you can ever present any evidence to support it. So, I'll sustain the objection.

[*Defense Counsel*]: All right. But, your Honor, in addition, we did raise, yesterday, with the complaining witness, that she was alone. And the reason I gave to you, yesterday, was that also this is about a matter of custody, and that the mother was using the child to be—

*The Court*: (Interposing) I understand your conspiracy theory, here, Ms. Schlussel, but I haven't heard any evidence to support it. And, so, I'll sustain the People's objection to relevancy on this line of questioning.

[*Defense Counsel*]: All right.

Read in context, the court's statement regarding a "conspiracy theory" does not amount to judicial partiality. *Stevens*, 498 Mich at 164. It is within the trial court's discretion whether to admit or exclude evidence. *Feezel*, 486 Mich at 192. Here, the trial court explained its reasoning for sustaining the prosecution's objection based on relevancy, and when defense counsel continued to attempt that line of questioning, the court further elaborated. The court's errant remark did not rise to the level of judicial partiality.[3] *Stevens*, 498 Mich at 164.

Moreover, "the presence or absence of a curative instruction is a factor in determining whether a court displayed the appearance of advocacy or partiality." *Id*. at 177. "The model jury instructions . . . emphasize that a judge's comments, rulings, and questions do not constitute evidence and that the jury should not attempt to discern the judge's personal opinion while considering the case." *Id*. After the jury was empaneled, the jurors were instructed by the trial court that "Nothing I ever say, however, is meant to reflect my own opinions about the case. As

---

[3] There was evidence of frustration by the trial court with counsel throughout this lengthy trial. See *Stevens*, 498 Mich at 164 (one factor to consider is the extent to which the judge's conduct was directed at one party more than the other). During the prosecution's cross-examination of defendant, the court stated, "We're getting really far afield here. This is beginning to sound like the Maury Povich Show."

jurors, you are the only ones who will be deciding the case." And after closing arguments, the jury was again instructed, "And if you think I have a personal opinion about the case, pay no attention to that opinion. You are the only judges of the facts, and you should decide this case only from the evidence." Jurors are presumed to follow their instructions. *Id*. As such, defendant cannot establish a plain error affecting his substantial rights in regards to the court's remarks where the jurors were properly instructed, and are presumed to follow the instructions. *Id*.

## C. DEADLOCKED JURY INSTRUCTION

After the jury was released for deliberations, the trial court informed counsel for both sides outside the presence of the jury that the court received a note from the jury asking, " 'What if we cannot reach a unanimous decision?', and 'Can you review the definition of reasonable doubt?' " The court told the attorneys, "Well, the definition of reasonable doubt is in the jury instructions that they have. And I'll read it to them, I guess, if I have to. And I'll give them the deadlocked jury instruction and just tell them to keep trying." Defense counsel had no objection to the reading of the deadlocked jury instruction. The court brought the jury out, and said:

> You know, I'm not surprised, in a case like this, that there are some sharply divided opinions among you. You asked: "What if we cannot reach a unanimous decision?"
>
> *Well, eventually, I guess we'd just have to just give up, throw up our hands, and declare a mistrial, or a hung jury, and then try the case, again, in front of a— in front of a different jury, of course.*
>
> But I don't want to give up that easily. So, we've all invested some time in this, and I would like you to return to the jury room.
>
> There is a standard jury instruction that a judge is obligated to give in these circumstances where a jury thinks they're deadlocked. And I'm going to give that to you in a minute. [(Emphasis added).]

When a jury indicates that it cannot reach a unanimous verdict, the court may give a supplemental instruction to encourage the jury to continue to deliberate. *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019). "The goal of such an instruction is to encourage further deliberation without coercing a verdict." *Id*. at 277.

Here, defendant raises issue not with the actual jury instruction itself, but rather, with the court's introductory statement to the jury that "Well, eventually, I guess we'd just have to just give up, throw up our hands, and declare a mistrial, or a hung jury, and then try the case, again, in front of a—in front of a different jury, of course." Read in context, the court's introductory statement does not rise to the level of judicial bias. *Stevens*, 498 Mich at 164. The court did not reference or refer to Munson's statement in the interrogation video that trials are difficult for child victims, and it is a far-fetched argument to make that the trial court's introductory statement to the jury instruction somehow implied that another trial would be difficult for AD. Thus, defendant has failed to demonstrate a plain error affecting his substantial rights, *Carines*, 460 Mich at 763, and there was no judicial bias, *Stevens*, 498 Mich at 164.

## VI. IMPEACHING WITNESSES

The trial court did not abuse its discretion by precluding defense counsel from impeaching AD or Sweet.

To preserve an issue regarding the exclusion of evidence, the defendant must have made an offer of proof of the substance of the evidence, or it was made apparent from the context within which questions were asked. MRE 103(a)(2); see also *People v Snyder*, 462 Mich 38, 42-44; 609 NW2d 831 (2000). When defense counsel attempted to impeach the witnesses, objections were made by the prosecutor and ruled on by the court, or the court directed defense counsel that she could not impeach the witnesses in the manner attempted. Therefore, this issue is preserved. To the extent that defendant now makes a constitutional argument based on Confrontation Clause grounds, this issue is unpreserved because defendant did not raise this argument in the trial court. *Stimage*, 202 Mich App at 30.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Wilder*, 502 Mich 57, 62; 917 NW2d 276 (2018) (quotation marks and citation omitted). "Whether a defendant was deprived of his constitutional right to present a defense is reviewed de novo." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). A Confrontation Clause violation is considered a nonstructural error, *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009), and unpreserved claims of nonstructural, constitutional error are reviewed for plain error. *Carines*, 460 Mich at 763.

It is well established that a criminal defendant has a constitutional right to a "meaningful opportunity to present a complete defense." *King*, 297 Mich App at 473 (quotation marks and citations omitted). This right, however, is not unlimited, and the defendant must still comply with the rules of evidence. *Id*. at 473-474.

MRE 611(c) defines the scope of cross-examination and states that "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination." MRE 613 provides:

> (a) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

> (b) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. . . .

A prior statement of the witnesses is not considered hearsay when "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, . . . ." MRE 801(d)(1).

-18-

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court," and "[e]vidence which is not relevant is not admissible." MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "[E]vidence is relevant when it affects the credibility of the victim and when it affects the credibility of witnesses who enhance the victim's credibility." *King*, 297 Mich App at 476-477. "One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify, or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v Salimone*, 265 Mich 486, 499-500; 251 NW 594 (1933). "Inconsistent out-of-court statements of a witness are admissible only for impeachment purposes and, since they would otherwise be hearsay, cannot be used as substantive evidence of the truth of the matter asserted." *People v Kohler*, 113 Mich App 594, 599; 318 NW2d 481 (1981).

## A. TESTIMONY OF AD

During cross-examination of AD, defense counsel asked if she remembered any of her testimony from the preliminary examination, and AD responded, "Not really." The preliminary examination transcript was then read into the record wherein AD was asked how long she lived with defendant, to which AD said that she did not know, and was then asked, " 'Was it a year, two years, or a few months?' " and her response had been, " 'I don't know, I think my mom knows.' " The trial court sustained the prosecutor's objection that the transcript could not be used for impeachment, concluding that there was no inconsistent statement made by AD at trial and the evidence was largely irrelevant.

The trial court did not abuse its discretion when it upheld the prosecutor's objection to defense counsel's line of questioning. *Wilder*, 502 Mich at 62. Defense counsel did not specify that the victim's trial testimony differed from her statements made at the preliminary examination. And defense counsel was not precluded from impeaching AD entirely, as defense counsel then successfully impeached AD regarding her age with her prior inconsistent statement at the preliminary examination. Moreover, "[t]emporal variances are not fatal unless time is of the essence of the offense. In criminal sexual conduct cases, especially those involving children, time is not usually of the essence or a material element." *People v Sabin*, 223 Mich App 530, 532; 566 NW2d 677 (1997) (citations omitted). Therefore, it was not an abuse of discretion for the trial court to deem the evidence related to the timeline of events as irrelevant, and as such sustain the prosecution's objection. *Wilder*, 502 Mich at 62.

Defendant argues that defense counsel was precluded from impeaching AD in two other instances. The first occurred during cross-examination when defense counsel asked AD if she remembered being asked about a UTI, after having provided AD with the preliminary examination transcript to refresh her memory. AD responded that she did not remember, and the transcript did not refresh her memory. When defense counsel asked if she could read from the preliminary examination transcript, the court answered, "Well, if she doesn't remember giving the testimony then you're not gonna' be able to get this in as a prior inconsistent statement, are you?" Defense counsel said, "it's not necessarily that it's a prior inconsistent statement, it's that she had discharge

from her UTI[]s." The prosecutor then stipulated that at the preliminary examination, AD said that she went to the doctor and had a UTI, and that was when the doctor mentioned sex, prompting AD to ask Sweet about it, and then make her disclosure, and the disclosure occurred around the holidays. The court then told defense counsel that if she could link the UTI to the moisture on AD's mattress she could, but it would have to be through "some other way, not through [AD]." Defense counsel disagreed with the timeline provided by the prosecutor, and said she would have to get this information in through another witness.

The trial court did not abuse its discretion by precluding further questioning of AD about her UTI. *Wilder*, 502 Mich at 62. AD stated that she did not remember being asked about her UTI at the preliminary examination, and that the transcript she was shown did not refresh her memory. Although defense counsel sought to establish some sort of timeline through this testimony, it was already established that AD went to the doctor after she had moved back in with her mother, and made the disclosure shortly thereafter, around the holidays in 2017. Therefore, the trial court did not abuse its discretion by directing defense counsel away from this line of questioning. *Id*. The UTI diagnosis and any symptoms AD might have experienced as a result, moreover, were irrelevant as they occurred years after the incidents occurred. The trial court did not abuse its discretion by excluding irrelevant evidence. MRE 401; MRE 402.

Lastly, defendant argues that defense counsel was precluded from impeaching AD regarding statements she allegedly made about being in diapers at the time of the incidents. Defense counsel asked if AD was in diapers at the time of the incidents, and AD said that she was not. Defense counsel asked AD if she told police that she was in diapers, and AD said that she did not remember. Defense counsel wanted to approach AD with the police report to refresh AD's memory, and the prosecutor said that the Kids Talk tape would be the proper way to impeach AD because the police report contained the officer's summary of the Kids Talk tape. Nonetheless, AD reviewed the police report, and testified that it did not refresh her collection regarding whether she told police that she was in diapers. Defense counsel asked if she could read from the police report, and the following exchange occurred:

> *The Court*: Well, only if the People agree, because otherwise you could probably introduce it, with a little more tedium, as a prior contrary statement. But the witness—I mean I don't know what the importance of this is.

> [*Prosecutor*]: If you wanna' play it from the Kids Talk, you can, because she doesn't remember it.

> *The Court*: Yeah, she doesn't remember. So, all you can do is introduce— you know, if you want to go to the trouble of introducing some of her prior statements in your case-in-chief, but you can't use her—you can't use it to impeach her because she doesn't remember giving it.

The trial court did not abuse its discretion or improperly preclude defense counsel from impeaching AD. *Wilder*, 502 Mich at 62. Rather, the trial court merely ruled that the police report was not the proper way to impeach AD because it only provided the police officer's summary of the Kids Talk tape, and that the proper way to impeach AD would have been to play the Kids Talk

tape to the jury. The trial court therefore did not abuse its discretion when defense counsel chose not to pursue this line of questioning through the Kids Talk tape. *Id*.

## B. TESTIMONY OF SWEET

Defendant argues that the court improperly limited his cross-examination of Sweet, and improperly referenced a "conspiracy theory." Specifically, when defense counsel asked Sweet if she had ever left AD alone in a hotel room, the court sustained the prosecution's relevance objection, stating to defense counsel, "you may have that theory in mind, but I don't know how you can ever present any evidence to support it." Then defense counsel mentioned in her questioning that this was a matter of custody, and that Sweet was "using the child to be—" and the court interposed by saying, "I understand your conspiracy theory, . . . , but I haven't heard any evidence to support it."

"There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *King*, 297 Mich App at 473 (quotation marks and citation omitted). "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). But "neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *Id*. The trial court may impose reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of the issues, or interrogation that is repetitive or " 'only marginally relevant.' " *Id*. (citation omitted).

The trial court did not abuse its discretion when it sustained the prosecution's relevancy objection in response to defense counsel's questioning related to Sweet leaving AD alone in a hotel room. *Wilder*, 502 Mich at 62. As the trial court noted, there was no evidence at that point to suggest that someone other than defendant had sexually assaulted AD. AD testified that defendant sexually assaulted her. Sweet testified that AD disclosed that defendant touched her. Thus, the court imposed a reasonable limit on cross-examination because this information was " 'only marginally relevant' " at best. *Adamski*, 198 Mich App at 138.

Next, defendant argues that the trial court unfairly prevented defense counsel from impeaching Sweet regarding her history with Child Protective Services (CPS). During cross-examination, Sweet admitted that she had prior involvement with CPS unrelated to this case. Defense counsel then sought to question Sweet about a prior statement to CPS that she had not had any prior involvement with CPS. The court sustained an objection to that testimony.

It was proper for the court to limit defense counsel's questioning to relevant matters, and the relevancy of Sweet's CPS involvement in matters other than this case is questionable. *Id*. Although defense counsel argued that her questioning went to Sweet's credibility because defense counsel had a CPS report indicating that Sweet denied any CPS contact to CPS, that was not the question posed to Sweet. Sweet did not testify regarding any statements she made to CPS in the past, only that she had prior involvement with CPS. Thus, defendant has failed to demonstrate that the trial court abused its discretion. *Wilder*, 502 Mich at 62.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

To preserve a claim of ineffective assistance of counsel, the defendant must move for a new trial or request an evidentiary hearing. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). Defendant failed to file a motion for a new trial or request an evidentiary hearing in the trial court; however, he filed a motion to remand with this Court under MCR 7.211(C). This motion and a subsequent one were denied. Because defendant's motion to remand was denied and no evidentiary hearing was held in the trial court, defendant's claim of ineffective assistance of counsel is limited to review for errors apparent on the record. *Head*, 323 Mich App at 539. "Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (citations omitted).

To establish ineffective assistance of counsel, the defendant must show "(1) counsel rendered assistance that 'fell below an objective standard of reasonableness' under prevailing professional norms and (2) that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]' " *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (citation omitted, brackets original). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id*. (citation omitted). The defendant bears the burden to demonstrate deficient performance and prejudice; thus, the defendant bears the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. *Id*. "Decisions regarding what evidence to present . . . are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). There is a strong presumption that the assistance of counsel constitutes sound trial strategy, which the defendant must overcome. *Id*.

## A. OTHER-ACTS EVIDENCE

As noted in several other sections above, defense counsel opened the door to the admission of other-acts evidence when she asked Sweet on cross-examination whether she had ever heard from any other third parties that defendant had molested any girls, including AD. Defendant argues that had defense counsel properly investigated this case, she would not have asked Sweet this question, and the admission of the other-acts evidence was highly prejudicial to defendant.

A failure to conduct a reasonable investigation can amount to ineffective assistance. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "When making a claim of defense counsel's unpreparedness, a defendant is required to show prejudice resulting from this alleged lack of preparation." *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). Defendant has failed to meet this burden. Although Sweet answered defense counsel's question by saying that she had heard a third party claim that defendant molested another girl, and on redirect the prosecutor asked Sweet who she heard this from, and whether the alleged victim was a minor, the prosecutor also stated that she would not use this information in closing argument, and she did not. Defense counsel also tried to rephrase the question or withdraw it, but the trial court directed Sweet to answer once it was made clear that she had heard and understood the question.

Nonetheless, defendant is unable to demonstrate that but for defense counsel's error in opening the door, the result of the proceedings would have been different. *Muhammad*, 326 Mich App at 63. AD testified that defendant sexually assaulted her, and this testimony was sufficient to convict defendant. *Gursky*, 486 Mich at 623. Had defense counsel moved for a mistrial or a curative instruction, she most likely would have been denied for having opened the door to the other-acts evidence, and such requests would have been futile. *Whetstone*, 119 Mich App at 554; *McMaster*, 154 Mich App at 570. Therefore, defendant has failed to establish ineffective assistance of counsel with regard to the admission of the other-acts evidence.

## B. INTERROGATION VIDEO

Next, defendant argues that defense counsel was ineffective because she stipulated to the admission of the interrogation video, wherein Munson allegedly improperly bolstered AD's credibility and suggested that defendant was guilty, and introduced defendant's statement that AD had never lied about anything of this nature before.

Defendant relies on *People v Tomasik*, 498 Mich 953, 953; 872 NW2d 488 (2015), where the Supreme Court reversed in part the opinion of this Court, and remanded to the circuit court for a new trial, providing:

> The trial court abused its discretion by admitting the recording of the defendant's interrogation. Because nothing of any relevance was said during the interrogation, it was simply not relevant evidence, and thus was not admissible evidence. See MRE 401. The admission of this evidence amounted to plain error that affected the defendant's substantial rights and seriously affected the fairness, integrity or public reputation of judicial proceedings. In a trial in which the evidence essentially presents a 'one-on-one' credibility contest between the complainant and the defendant, the prosecutor cannot improperly introduce statements from the investigating detective that vouch for the veracity of the complainant and indicate that the detective believes the defendant to be guilty. [*Id*. (citations omitted).]

In the interrogation video in *Tomasik*, the detective had said that she " 'investigated the heck out of the case and knows everything that has gone on' and that she 'kn[e]w things happen[ed] when [the victim] came over to your house years ago.' " *People v Tomasik*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2010 (Docket No. 279161), pp 6-7, vacated 488 Mich 1053 (2011).

Here, the interrogation video contained relevant evidence, and Munson's statements did not vouch for AD's credibility. Munson engaged in interrogation tactics when he said that he had AD's medical records, but no further discussion ensued. Munson explained to defendant how DNA evidence works, and asked defendant if he would be concerned if a DNA sample was taken and compared to other evidence, and defendant said that he was not concerned. Munson asked defendant to be honest, and said "*if* anything happened" to consider AD because such proceedings would be hard for her, and she would be "dragged through the coals." Thus, Munson did not express any sentiment that he thought that defendant was guilty. Munson asked if AD had ever lied before, to which defendant responded, "Not of this nature." This does not amount to vouching for AD's credibility. Lastly, when defendant said that Mullins would always get him if one of the

children had a nightmare because Mullins would hear the child first and defendant was a heavy sleeper, Munson found it "hard to believe" because he would expect a little girl of AD's age to call for her father when waking up from a nightmare. The statements made by Munson are distinguishable from those made in *Tomasik* because they did not constitute a conclusion or opinion as to defendant's guilt or the amount of evidence amassed against defendant. As such, defendant has failed to establish ineffective assistance of counsel by defense counsel's stipulation to admit the video into evidence.

Additionally, defendant argues that the admission of the interrogation video prejudiced him because it introduced his statement that AD had not lied about anything serious before, and this was irrelevant to whether AD was lying about these allegations. "Decisions regarding what evidence to present . . . are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77. Although the prosecutor relied on defendant's statement that AD had never lied about anything of this nature before, defense counsel's decision to stipulate to admission of the interrogation video is a matter of trial strategy that will not be substituted by this Court. *Id*. Moreover, defendant was advised of his *Miranda* rights[4] during the interrogation, waived them, and voluntarily chose to speak to Munson. Thus, any objection by defense counsel to the admission of the video would have been futile. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) ("Counsel is not ineffective for failing to make a futile objection.").

## C. KIDS TALK TAPE

Next, defendant argues that defense counsel was ineffective for failing to play the Kids Talk tape, which allegedly contained impeachment material to be used with AD.

Trial counsel's decisions regarding what evidence to present are a matter of trial strategy. *Rockey*, 237 Mich App at 76. AD testified at trial that she was seven years old when she lived with defendant and the sexual assaults occurred, and that she was not in diapers at the time. Assuming, arguendo, that the Kids Talk tape would have established an inconsistency in AD's testimony, defendant cannot establish that but for defense counsel's failure to play the video, the results of the proceedings would have been different. *Muhammad*, 326 Mich App at 63. Defendant stated in the interrogation video that AD stopped wearing diapers at the normal time, but he did not know when because it was at a time when AD was living with Sweet, and defendant did not see AD often. Defendant said that AD had no problems with bed wetting after she was out of diapers, and never recalled any wet spots on AD's bed. AD testified that there was a wet spot on her bed only after the times that defendant penetrated her with his penis, not his fingers. Defendant was only convicted of the two counts of first-degree CSC for digital penetration; the jury was hung on the two counts of first-degree CSC for penetration with his penis, which were later dismissed. Thus, defendant cannot demonstrate that he was prejudiced by defense counsel's failure to play the Kids Talk tape in an attempt to impeach AD. *Id*.

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

## D. PROSECUTORIAL ERROR

Defendant merely states in his brief on appeal that defense counsel failed to object to the numerous instances of prosecutorial error as listed in section IV, and cites only *People v Douglas*, 496 Mich 557; 852 NW2d 587 (2014). Only one of the alleged instances of prosecutorial error concerned improper "bolstering" of AD's credibility—when the prosecutor misquoted defendant. The failure to properly argue the merits of an issue on appeal results in it being abandoned. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). Moreover, as discussed more fully in section IV, defendant failed to establish any instances of prosecutorial error that denied him a fair and impartial trial. Therefore, any objection by defense counsel would have been futile. *Thomas*, 260 Mich App at 457.

## E. FAILURE TO LIST BOARD AS WITNESS

Defendant next argues that defense counsel was ineffective for failing to list Board on the witness list, which precluded defense counsel from calling Board to testify. Defendant asserts that this prejudiced defendant because Board could have testified regarding AD's attitude and relationship with defendant in 2017, and that defense counsel should have moved for a mistrial once the court barred Board from testifying.

Defense counsel admitted that she inadvertently left Board off the witness list. However, defendant cannot prove that but for this error, the result of the proceedings would have been different. *Muhammad*, 326 Mich App at 63. Defendant relies on an affidavit of Board, attached as an exhibit to his brief on appeal. This affidavit was not part of the lower court record, so it cannot be considered on appeal. See *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009) (affidavits attached to appellate brief were not part of the lower court record and could not be considered on appeal). Regardless, any testimony offered by Board as to the love and relationship between AD and defendant would have been cumulative to the testimony provided by the defense's other witnesses. Mullins and defendant testified that defendant and AD had a loving relationship, and AD testified that she had a loving relationship with defendant. Had defense counsel moved for a mistrial after the trial court ruled that Board could not testify, it would have been futile because it was the error of defense counsel to leave Board off the witness list and the evidence was cumulative. *Whetstone*, 119 Mich App at 554; *McMaster*, 154 Mich App at 570. Therefore, defendant cannot establish ineffective assistance of counsel in this regard.

## F. CUMULATIVE EFFECT

Lastly, defendant argues that each of the above-listed errors made by defense counsel were serious enough standing alone to constitute ineffective assistance, but in the alternative, the cumulative effect of the errors deprived him of a fair trial. However, this Court only aggregates actual errors when determining whether the cumulative effect of errors warrants a new trial. *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002). The only actual errors that defense counsel made were opening the door to other-acts evidence and her failure to list Board as a witness. However, these do not rise to the level of ineffective assistance of counsel, nor did any of the other claimed instances of ineffective assistance. Thus, in terms of ineffective assistance, there is no cumulative effect that would warrant a new trial. *Id.*

## VIII. CUMULATIVE EFFECT OF ERRORS

Defendant has not established that there is a cumulative effect of any alleged errors that denied him his right to a fair trial.

Defendant did not argue in the trial court that any cumulative errors deprived him of a fair trial. Therefore, this issue not preserved. This Court reviews an argument under the cumulative error doctrine by examining the actual errors identified on appeal to determine whether the errors cumulatively deprived the defendant of a fair trial. *LeBlanc*, 465 Mich at 591 n 12. This issue is unpreserved, so it is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Under the cumulative error doctrine, this Court will reverse and remand for a new trial when the cumulative effect of several errors establishes that the defendant did not receive a fair trial, even though no one error by itself warranted a new trial. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). The test on appeal is whether the defendant received a fair trial, despite any irregularities, or whether the irregularities so undermined the fairness of the trial that a new trial is warranted. *People v Skowronski*, 61 Mich App 71, 77; 232 NW2d 306 (1975). In assessing whether the cumulative effect of several otherwise minor errors warrants a new trial, this Court will only aggregate actual errors. *LeBlanc*, 465 Mich at 591 n 12.

Defendant has established three actual errors that occurred during his trial—the trial court's admission of hearsay evidence under MRE 803A when that exception did not apply, defense counsel opening the door to other-acts evidence, and defense counsel's failure to list Board as a witness on the witness list. The erroneous admission of the hearsay evidence as well as the admission of the other-acts evidence was harmless error, and the preclusion of Board testifying at trial did not deprive defendant of a substantial defense, as explained more fully above. Thus, while there were these three individual errors, none of the three individually or collectively undermined the reliability of the verdict, *Skowronski*, 61 Mich App at 77, or constitute plain error that affected defendant's substantial rights, *Carines*, 460 Mich at 763, because the remaining evidence supported the convictions.

## IX. ASSESSMENT OF COSTS AND FEES AT SENTENCING

The trial court did not commit plain error affecting defendant's substantial rights when it imposed the state minimum costs and crime victim's rights assessment, but it did commit plain error when it ordered defendant to pay court costs without establishing a factual basis and imposed a late fee without giving notice of a due date.

A defendant must object to the trial court's imposition of court costs in the lower court to preserve this issue for appeal. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). Although the court did not address the imposition of costs at sentencing, and as such defendant made no objections, he raised this issue for the first time in his motion to remand filed with this Court. Therefore, the issue is not preserved. *Id*. Because defendant failed to object to the trial court's imposition of costs in the lower court, this challenge is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Defendant argues that the trial court erred in imposing all of the above-referenced costs at sentencing without providing a factual basis or designating a due date. Defendant was sentenced

on June 12, 2019. There was no discussion of the imposition of any costs or fees. However, defendant was assessed the following costs in the judgment of sentence: (1) state minimum: $136 ($68 x 2); (2) crime victim: $130, and (3) court costs: $1,300, for a total of $1,566. The judgment of sentence contains the following statement, "The due date for payment is _____. Fine[s], costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed." No due date was entered in the blank space. Defendant asserts that he was assessed a late penalty fee of $260 on August 8, 2018.[5]

MCL 769.1k(1)(a) provides that if a defendant is found guilty after a trial, "[t]he court shall impose the minimum state costs as set forth in section 1j of this chapter." Under MCL 769.1j(1)(a), the court "shall order" that the defendant pay $68 if he is convicted of a felony. The term "shall" denotes a mandatory action. *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017). As such, the trial court lacks discretion in imposing state minimum costs. Therefore, the trial court did not commit a plain error affecting substantial rights when it assessed defendant $136 in state minimum fees because he was convicted of two felonies—two counts of first-degree CSC.

Crime victim's assessments are also provided by statute. MCL 780.905(1)(a) provides that the court "shall order each person charged with an offense that is a felony, . . . that is resolved by conviction, . . . to pay an assessment" of $130 if the offense is a felony. Again, the use of the word "shall" denotes a mandatory action on the trial court. *Ellison*, 320 Mich App at 180. And defendant was convicted of a felony—first-degree CSC. Therefore, the trial court did not commit a plain error affecting substantial rights when it assessed defendant $130 in crime victim's assessment fees.

However, it is within the discretion of the trial court to order a defendant to pay reasonable court costs. *Konopka (On Remand)*, 309 Mich App at 358. MCL 769.1k(1)(b)(*iii*) provides that if a defendant is found guilty after a trial, the court "may" impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, . . . ." The term "may" denotes discretion. *Ionia Ed Ass'n v Ionia Pub Schs*, 311 Mich App 479, 493 n 6; 875 NW2d 756 (2015). The trial court must establish a factual basis for the court costs imposed. *Konopka (On Remand)*, 309 Mich App at 359. "[W]ithout a factual basis for the costs imposed, [this Court] cannot determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)." *Id*. at 359-360.

The trial court ordered defendant to pay $1,300 in court costs in the judgment of sentence. The trial court failed to articulate a factual basis for the assessment of this fee at sentencing, and there is nothing in the lower court record providing a factual basis for the court costs. Thus, there is no lower court record providing whether the court costs "were reasonably related to the actual costs incurred by the trial court." *Id*. When a defendant raises a challenge to the trial court's lack of reasoning for imposing court costs, "[he] should be given the opportunity to challenge the reasonableness of the costs imposed." *Id*. at 360. Therefore, the trial court committed plain error

---

[5] This appears to be a typographical error as defendant was sentenced on June 12, 2019.

when it ordered defendant to pay $1,300 in court costs without establishing a factual basis for the amount imposed.

Additionally, defendant was assessed a $260 late fee, even though the judgment of sentence had no due date for payment of the costs and fees imposed. This was also a plain error, as the prosecution concedes in its brief on appeal.

## X. CONSTITUTIONALITY OF STATUTE GOVERNING COURT COSTS

Defendant argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional because it requires trial courts to impose court costs at sentencing, which directly funds trial judges and the court, thereby impeding the trial judge's constitutional duty to be impartial and violating the separation of powers clause of the Michigan Constitution. In essence, defendant is asserting a facial challenge to the statute.[6]

"To be preserved for appellate review, an issue must be raised before and addressed by the trial court." *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). Defendant did not raise any constitutional claims regarding the imposition of court costs at sentencing. He raised this issue for the first time in his motion to remand. Therefore, this issue is unpreserved. *Id*. Nonetheless, review is appropriate. See *People v Wilson*, 230 Mich App 590, 593; 585 NW2d 24 (1998) ("Although [the] defendant should have challenged the constitutionality of the statute in the trial court to preserve the issue for appellate review, we may still consider this constitutional question absent a challenge below."). "This Court reviews de novo constitutional issues and questions of statutory interpretation." *Wiley*, 324 Mich App at 150. However, this unpreserved constitutional issue is reviewed for plain error affecting defendant's substantial rights. *Id*.

"Statutes are presumed to be constitutional unless their unconstitutionality is clearly apparent. Statutes must be construed as proper under the constitution if possible. The party opposing the statute bears the burden of overcoming the presumption and proving the statute unconstitutional." *Id*. at 151 (quotation marks and citation omitted).

> We exercise the power to declare a law unconstitutional with extreme caution, and we never exercise it where serious doubt exists with regard to the conflict. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. . . . When considering a claim that a statute is

---

[6] A facial challenge makes a claim that a statute is unconstitutional on its face, and there are no circumstances in which the statute would be valid. *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014). Whereas "[a]n as-applied challenge . . . alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Bonner v Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014) (quotation marks and citation omitted). Defendant makes no argument on appeal that the sentencing judge was impartial in regards to court costs, focusing solely on the operation of the statute as a whole. Thus, this argument is properly treated as a facial challenge. *Wilder*, 307 Mich App at 556.

unconstitutional, the Court does not inquire into the wisdom of the legislature. [*In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307-308; 806 NW2d 683 (2011) (quotation marks, brackets, and citations omitted).]

"To make a successful facial challenge to the constitutionality of a statute, the challenger must establish that no set of circumstances exists under which the act would be valid." *Oakland Co v State*, 325 Mich App 247, 260; 926 NW2d 11 (2018) (quotation marks and citation omitted).

The statutory provision challenged here is MCL 769.1k(1)(b)(*iii*), which provides:

(1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:

* * *

(b) The court may impose any or all of the following:

* * *

(*iii*) Until October 1, 2022, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.

Defendant relies on the concurring opinion of Chief Justice McCormack in *People v Cameron*, 504 Mich 927; 929 NW2d 785 (2019) (MCCORMACK, C.J., concurring), to argue that MCL 769.1k(1)(b)(*iii*) is unconstitutional. Chief Justice McCormack wrote separately to concur in the order denying leave to appeal because "MCL 769.1k(1)(b)(*iii*) distinctly states a tax and [] the appellant has not established that the statute lacks an intelligible principle or violates the nondelegation doctrine." *Cameron*, 504 Mich at 927 (MCCORMACK, C.J., concurring). Nonetheless, she stated that "it's unclear to me that the statute does not prevent the judicial branch from 'accomplishing its constitutionally assigned functions.' " *Id*. (citation omitted). This was based on letters submitted by amicus curiae Michigan District Judges Association (MDJA), describing the pressure faced by judges to procure adequate funding for their courts. *Id*. However, because these issues were not "squarely presented" to the Court, there was no developed record, and no decision was made. *Id*.

Although defendant relies on *Cameron* to argue that the statute is unconstitutional because it violates a defendant's right to an impartial judge, the *Cameron* cases only apply to defendant's

brief argument that the statute violates the separation of powers clause. Under *People v Cameron*, 319 Mich App 215, 236; 900 NW2d 658 (2017), MCL 769.1k(1)(b)(*iii*) was determined to not violate the separation of powers clause. "[T]he publication of an opinion of this Court creates binding precedent statewide, and . . . the opinion remains binding until such time as a decision of the Supreme Court enters altering the lower court decision or questioning its rationale." *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996) (quotation marks and citations omitted). Therefore, defendant has not met his burden of proving that the statute violates the separation of powers doctrine. *Wiley*, 324 Mich App at 150-151.

The crux of defendant's argument on appeal is that the statute is unconstitutional because the statutory scheme for imposing court costs conflicts with a trial court judge's duty to be impartial, and thereby denies a defendant of due process. US Const, Am XIV and Const 1963, art 1, § 17 provide that no person will be deprived of life, liberty, or property without due process of law. "A fair trial in a fair tribunal is a basic requirement of due process." *Caperton v AT Massey Coal Co, Inc*, 556 US 868, 876; 129 S Ct 2252; 173 L Ed 2d 1208 (2009) (quotation marks, citation, and brackets omitted). It is a violation of due process when a judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case." *Tumey v Ohio*, 273 US 510, 523; 47 S Ct 437; 71 L Ed 749 (1927). But a "remote or minute interest in the litigation might by declared by the Legislature not to be a reason for disqualification of a judge" if the "[i]nterest is so remote, trifling, and insignificant that it may fairly be supposed to be incapable of affecting the judgment of or influencing the conduct of an individual." *Id*. at 529, 531 (quotation marks and citation omitted). The test for determining whether the due-process right to an impartial judge has been violated is when the "procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law." *Id*. at 532.

Defendant cites to one case in support of his argument, *Caliste v Cantrell*, 937 F3d 525, 526 (CA 5, 2019),[7] wherein a criminal district court magistrate's "dual role—generator and administrator of court fees" was held to create a conflict of interest where the magistrate set bail, and the proceeds were used to pay the magistrate's staff, purchase office supplies, and pay for other costs. The Fifth Circuit thoroughly discussed the history of caselaw pertaining to judicial impartiality when a judge has a financial connection to the case. *Id*. at 527-530, citing *Tumey*, 273 US 510; *Dugan v Ohio*, 277 US 61; 48 S Ct 439; 72 L Ed 784 (1928); and *Ward v Monroeville*, 409 US 57; 93 S Ct 80; 34 L Ed 2d (1972). However, the *Caliste* Court stated that its "holding that this uncommon arrangement violates due process does not imperil typical court fee systems. Our reasoning depends on the dual role combined with the direct, personal, and substantial interest the magistrate has in generating bond fees." *Caliste*, 937 F3d at 532 (quotation marks, brackets, and citation omitted). The magistrate's "dual role—the sole source of essential court funds and an appropriator of them—creates a direct, personal, and substantial interest in the outcome of decisions that would make the average judge vulnerable to the temptation . . . not to hold the

---

[7] "Cases from other jurisdictions are not binding precedent, but we may consider them to the extent that this Court finds their legal reasoning persuasive." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 147 n 5; 871 NW2d 530 (2015).

balance nice, clear, and true. The current arrangement pushes beyond what due process allows." *Id*. (quotation marks and citations omitted).

Here, there is no indication or argument by defendant that sentencing judges are both the source of court funding as well as the appropriator of those funds under the challenged statutory scheme. Therefore, the facts of this case as well as the statutory scheme are distinguishable from those in *Caliste*. Rather, as discussed in section IX, trial courts do not have unfettered discretion in imposing court costs. They must be "reasonably related to the actual costs incurred by the trial court," MCL 769.1k(1)(b)(*iii*), and the trial court must set out a factual basis demonstrating such, *Konopka (On Remand)*, 309 Mich App at 359-360. The statute does not provide the trial court with authority to increase court costs imposed on a defendant as a means of increasing revenue.

Additionally, in contrast to *Caliste*, MCL 769.1k(1)(b)(*iii*)(A)-(C) do not indicate that money paid in court costs directly or indirectly goes to the salaries or expenses related to judges, court employees, or judicial chambers. In fact, Const 1963, art 6, § 17 provides that "[n]o judge or justice of any court of this state shall be paid from the fees of his office nor shall the amount of his salary be measured by fees, other moneys received or the amount of judicial activity of his office." Thus, there is no direct nexus between a judge's compensation and costs imposed as was present in *Tumey*.

Defendant fails to meet his burden that there is "no set of circumstances [] under which the [a]ct would be valid" to succeed on a facial challenge. *Varran v Granneman*, 312 Mich App 591, 609; 880 NW2d 242 (2015). Defendant merely argues that because there is the potential for bias, the statute is unconstitutional. This is not the proper standard for evaluating a facial challenge to the constitutionality of a statute. *Id*. It is presumed that judges are impartial. *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). It is therefore presumed that trial court judges order court costs properly under the statute, and not for any ulterior financial motive. Although the letters from the MDJA indicate that judges are pressured to maintain the financial stability of their courts, it does not prove that judges actually impose court costs improperly under the circumstances. If any court costs get funneled back to the court through the statutory funding system, the connection is far too attenuated to impact a trial judge's decision to order court costs, particularly where a factual basis must be established. Thus, defendant has failed to meet his burden that MCL 769.1k(1)(b)(*iii*) is facially unconstitutional. *Varran*, 312 Mich App at 609.

## XI. ACCURATE JUDGMENT OF SENTENCE

This issue is moot because an amended judgment of sentence dated September 24, 2019, is included in the lower court record which corrects the clerical mistakes.

"To be preserved for appellate review, an issue must be raised before and addressed by the trial court." *Wiley*, 324 Mich App at 150. Defendant did not raise the issue of correction of the judgment of sentence in the trial court. It was first raised in his motion to remand filed with this Court. Therefore, this issue is not preserved. *Id*. "[A]ny corrections or modifications to a judgment of sentence must comply with the relevant statutes and court rules." *People v Holder*, 483 Mich 168, 176; 767 NW2d 423 (2009). "This Court reviews de novo questions of law, including the interpretation and application of our court rules." *People v Howell*, 300 Mich App

638, 644; 834 NW2d 923 (2013). Because this issue is unpreserved, it is reviewed for plain error. *Carines*, 460 Mich at 763.

Defendant argues on appeal that this matter should be remanded for the ministerial task of correcting the judgment of sentence. Defendant was convicted of Counts III and IV—two counts of first-degree CSC. At sentencing, the trial judge stated, "I am going to sentence you to two concurrent prison terms of no less than 25 years, no more than 30 years, with the MDOC." However, on the original judgment of sentence, entered June 12, 2019, the maximum term of years, the date the sentence begins, and the amount of jail credit are left blank for Count IV. The prosecution concedes on appeal that the original judgment of sentence contains a clerical error. Under MCR 6.435, "[c]lerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it."

Although both parties state on appeal that correction of the judgment of sentence is needed,[8] an amended judgment of sentence dated September 24, 2019, is included in the lower court record. The amended judgment of sentence includes the missing information in regards to Count IV—the maximum term of years, the date the sentence begins, and the amount of jail credit. Therefore, this issue is moot. See *People v Gonzalez*, 256 Mich App 212, 235 n 8; 663 NW2d 499 (2003).

## XII. CONCLUSION

Defendant's convictions and sentences are affirmed, and the judgment of sentence is vacated as to the $1,300 court costs only, as well as the assessment of a late fee. This matter is remanded to the trial court to establish a factual basis for the order of court costs, as well as a due date for any costs and fees imposed. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens

---

[8] We note that defendant attached to his brief on appeal a January 17, 2020 letter from the MDOC to the trial court judge, indicating that it previously wrote to the court on June 26, 2019, and September 24, 2019, requesting correction.